for selling it. Those facts constitute a temptation to the moral detriment of children which it was competent for the Legislature to remove by requiring junkdealers to be licensed, and by making it unlawful for them to buy of young children. People v. Ewer, 141 N. Y. 129, 36 N. E. 4, 25 L. R. A. 794, 38 Am. St. Rep. 788; People v. Pierson, 176 N. Y. 201, 68 N. E. 243, 63 L. R. A. 187, 98 Am. St. Rep. 666; Grand Rapids v. Braudy, 105 Mich. 670, 64 N. W. 29, 32 L. R. A. 116, 55 Am. St. Rep. 472, and cases cited in note 32 L. R. A. 116; People ex rel. Armstrong v. Warden, 183 N. Y. 223, 76 N. E. 11. See, also, People ex rel. Lieberman v. Vandecarr, 81 App. Div. 128, 80 N. Y. Supp. 1108, 175 N. Y. 440, 67 N. E. 913, and 199 U. S. 552. It may be that the statute should not receive a construction that would make it unlawful for a junk dealer to receive or purchase property from a child as the agent of the lawful owner (People v. Zabur, 183 N. Y. 242, 76 N. E. 17); but that question is not here, for there is no presumption that the boy was the duly authorized agent of another who had a lawful right to sell the junk, and it was not incumbent upon the people to show that he was not.

It follows that the conviction should be affirmed. All concur.

———

MULLER et al. v. THOMAS W. EVANS MUSEUM & INSTITUTE SOCIETY et al.

(Supreme Court, Appellate Division. First Department. May 18, 1906.)

PLEADING—ANSWER—AMENDMENT.

    Where a will devised the principal portion of an estate to a corporation to be organized for the purpose of founding a museum and institute, and on a contest of the will a compromise agreement was entered into as to the disposition of testator's property, and in an action by the executors and trustees under the will for the construction of the will and the compromise agreement the corporation organized under the terms of the will filed an answer, which its attorney claimed denied the validity of the compromise agreement, an amendment of the answer two years later by asserting proper allegations to call in question the validity of the compromise agreement should be allowed, where no other party in the action has changed position in the meantime so as to be injured by the amendment.

    Houghton and Clarke, JJ., dissenting.

Appeal from Special Term.

Action by Charles F. Muller and others, as executors and trustees under the will of Thomas W. Evans, deceased, against the Thomas W. Evans Museum & Institute Society and others. From an order denying the motion of the defendant the Thomas W. Evans Museum & Institute Society for leave to serve an amended answer (99 N. Y. Supp. 194), it appeals. Reversed, and motion granted.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Julian T. Davies, for appellant.
Alexander B. Crane, for respondent executors.
Frederic R. Coudert, for other respondents.
William L. Turner, for respondent Valois.
J. Noble Hayes, for respondents Eno and others.

McLAUGHLIN, J. The plaintiffs, as executors and trustees under the will of Thomas W. Evans, deceased, brought this action to have the will and a compromise agreement construed in relation to certain lands in the city of New York, and for instructions as to their duties in respect to a sale of the whole or a part of such lands, and the disposition of the proceeds derived therefrom if a sale be directed. The testator died in the city of Paris, France, on the 14th of November, 1897, leaving, him surviving, as his only relatives, a brother and his descendants and the descendants of two deceased sisters. He left an estate consisting of real and personal property of the estimated value of upwards of $4,000,000, located in the cities of Paris, Philadelphia, and New York. By his will he gave specific legacies, amounting, in the aggregate, to upwards of $250,000 to his relatives, directed his executors to erect a monument in his native city at a cost of not less than $100,000 nor more than $200,000, and the residue of his estate he gave by the sixteenth article of his will for the purpose of founding in the city of Philadelphia a museum and institute:

"(1) To the Thomas W. Evans Museum and Institute Society, a corporation able to receive, hold and transfer property in France and in the state of Pennsylvania, to be created and incorporated if possible before my death, under the laws of the state of Pennsylvania by preference, or under the laws of any other state of the United States of America where such incorporation may be made, absolutely and forever, under the reserves above mentioned and upon the charges, conditions and obligations imposed in this article."

If for any reason said corporation could not take, then (2) he gave such residuary estate to the persons named as executors, of whom there were six, two being heirs and legatees; if they could not take, then (3) to the city of Philadelphia; and if it could not take, then (4) to the state of Pennsylvania—the last three all being subject to the terms and conditions expressed in the first subdivision. By the seventeenth article of his will he provided that, if the sixteenth article failed, then such residuary estate should go to the executors; he expressing the belief that they would "voluntarily carry out all the wishes and requests expressed in this instrument in its entirety, although not obliged to do so under the law."

Immediately following the death of Dr. Evans, proceedings were taken by the executors named in his will for its probate in France, Pennsylvania, and New York, which were opposed in each jurisdiction by his heirs at law and next of kin. At the time of his death there was no corporation known as the "Thomas W. Evans Museum & Institute Society," but pending the steps taken for the probate of his will, certain officials and citizens of the city of Philadelphia instituted a proceeding to incorporate such society, and before they had finally succeeded in this respect they were restrained, pending the determination of an application made by the executors to annul the same. This was the situation on the 25th of June, 1900, when the executors, as parties of the first part, the heirs at law and next of kin of Mr. Evans, as parties of the second part, and the city of Philadelphia, acting through its mayor and corporation counsel, as parties of the third part, entered into an agreement under their respective seals, which, after reciting the pending litigation, provided, among other things, that the heirs at law should

withdraw all opposition to and consent that the will be probated and letters testamentary be issued to the executors and trustees named therein, and should assign, transfer, and set over to them all their right, title, and interest to such estate, except certain pecuniary legacies, and, in addition thereto, the sum of $800,000, in consideration of the executors paying to them, in addition to the specific legacies named in the will, the sum of $800,000 out of the residuary estate, $100,000 of which was to be paid within three months, and the remainder within a year thereafter, or as soon as the same could be obtained from the estate either in Europe or America; that the city of Philadelphia, or the persons acting in its behalf, should withdraw all opposition to the administration of said estate by the executors; that they should convert the estate into money as soon as it could be legally done without prejudice thereto, and, after making all proper deductions, pay the balance to the executors of Thomas W. Evans, deceased, in Pennsylvania, to there be distributed under order of the court; and the executors should withdraw their opposition to the incorporation of the Thomas W. Evans Museum & Institute Society. The agreement was carried out by the parties to it except that the heirs at law have only been paid out of the residuary estate $100,000, and there is now due them, according to the terms of the agreement, the balance of $700,000. The Thomas W. Evans Museum & Institute Society was incorporated under the original proceedings instituted in the state of Pennsylvania on the 21st of December, 1900. Intermediate its incorporation and the 24th of February, 1904, when this action was commenced, very little, if anything, seems to have been done by the executors or the society to carry out the object of the testator with reference to the museum and society which he sought to found, or to place in possession of such corporation or its trustees the residuary estate, or any part of it. On the 18th of April, 1904, the society served an answer to the complaint, by which, according to the contention of the heirs at law of Mr. Evans, the validity of the compromise agreement referred to was admitted, which fact, however, was vigorously denied by the attorney who drew the answer; he deposing that its intent was to deny that the society was bound by such agreement. After the service of the society's answer, and just prior to the time the action was to be moved for trial, in January, 1906, new attorneys having in the meantime been substituted for the society, an application was made for leave to amend the answer by inserting appropriate allegations necessary to test the validity of the compromise agreement in so far as it provided for the payment of the $800,000 out of the residuary estate, and also enlarging the prayer for relief by requiring the executors to render a general account, and·turn over to the society the entire residuary estate. The motion to amend was denied, and the society has appealed.

As a general proposition, a party to an action ought to be permitted to put his pleadings in such shape as will enable him to raise and have determined at the trial every question affecting his interest involved in the subject-matter of the litigation, and to this end great power is by statute conferred upon the court to amend any process, pleading, or proceeding, either upon the trial, before or after judgment, or at any

other stage of the action. The power thus conferred is usually, as it ought to be, freely exercised, in order that justice may be done between the parties. Merely technical rules of pleading no longer control, and the merits of an action and the rights of parties are now rarely determined upon affidavits. When, therefore, an application to amend is made in advance of a trial, and the court can see there is something substantial in the proposed amendment—that it is made in good faith—it is granted unless injustice will thereby be done to the adverse party. The party applying for the amendment must move promptly, lest his own laches defeat the application, and he will not be permitted to amend if in the meantime the adverse party by reason of his delay has so acted that it would be unjust and inequitable to permit the party applying to change his position; in other words, he is estopped either by lapse of time or his own acts from obtaining the amendment.

This application, it is apparent, was made in good faith, and if the contention of the heirs at law be correct—that the original answer admitted the compromise agreement—the proposed amendment is substantial. The society in its original answer could have pleaded every fact which it sought to plead by the amendment. Nothing has since occurred, either by the lapse of time or the act of the society, which has changed the position of any other party to the action; therefore, injustice will not be done by granting it. The compromise agreement was entered into; the $100,000 paid under it; opposition to the probate of the will withdrawn; and the release given by the heirs at law before the society came into existence. The situation and position of the parties now, so far as their legal rights are concerned, are precisely what they were when the original answer was served, and nothing has transpired which estops the society from raising by answer what it could have raised then. To constitute an estoppel in pais it must appear, says Judge Mullin, in Brown v. Bowen, 30 N. Y. 519, 86 Am. Dec. 406, cited with approval and adopted in Ackerman v. True, 175 N. Y. 353, 67 N. E. 629:

"(1) That the person sought to be estopped has made an admission or done an act with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposed to give or with the title he proposes to set up. (2) That the other party has acted upon or been influenced by such act or declaration. (3) That the party will be prejudiced by allowing the truth of the admission to be disproved."

If this rule be applied to the acts of the society, it at once becomes apparent that it is not estopped from asserting what it believes to be its interest, because it has done nothing but remain silent, and its silence does not appear to have been acted upon by any of the other parties to the action to their prejudice.

Dr. Evans died nearly nine years ago, and it is now almost six years since the compromise agreement was made, during which time the executors have been in possession of the entire residuary estate, and yet not a dollar, so far as appears, has yet been devoted to the founding of the society and institute which was the principal object of the testator's bounty. Under such circumstances, it would not only seem to be the right, but the duty, of the trustees of the corporation which has been incorporated for the purpose of carrying out his intent to take

some steps, either by the institution of a proceeding or the interposition of an answer, to compel the persons who have possession of the property to turn it over to the corporation, or devote it to the purpose which the testator intended. Whether this be so or not, the corporation should be permitted, upon the facts here presented, to so amend its answer as to raise and have determined at the trial such questions as its counsel may advise in order to properly protect its interest. The court ought not to assume to dispose of such questions upon affidavits, and that is what has been done here. In reaching this conclusion, I do not mean to be understood as expressing any opinion as to the merits or legal effect of the amended answer when interposed.

For these reasons, I think the order appealed from should be reversed, with $10 costs and disbursements, and the motion granted on payment by the corporation of all costs of the action to the time of the amendment to each respondent separately appearing and presenting briefly on this appeal.

O'BRIEN, P. J., and INGRAHAM, J., concur.

HOUGHTON, J. (dissenting). It seems to me that gross injustice will be done to the executors and to the heirs at law and next of kin of the deceased by permitting the defendant museum at this late day to amend its answer by setting up the invalidity of the compromise agreement. Acting under that agreement, the heirs and next of kin withdrew their objections to the probate of the will, and waived their claims that its provisions were invalid, and the executors paid $100,000 of the $800,000 agreed. The heirs and next of kin cannot be restored to the position they occupied when the agreement was entered into and acted upon, for it is now too late to contest probate, or to bring an action to set the probate aside, and very soon the six-year statute of limitations will have run against the claim of the executors to recover back the $100,000 which they paid, and very likely will have fully run before it shall be finally determined whether the agreement is good or bad. At the best, the executors would find themselves in an embarrassing position if they were to sue to recover back this money before such final determination, for it might be claimed the payment was a voluntary one, or that they were estopped from asserting the invalidity of the agreement, or, if there was any mistake, that it was one of law only. It is true that amendments should be liberally allowed in furtherance of justice, but it is equally true that they should not be allowed where manifest injustice will be done. If the museum by its original answer put in issue the validity of the compromise agreement, the parties must abide by the issue thus framed. If it did not, it should not be allowed to do so by amendment at this time, when the rights of the parties have so materially changed that they cannot be restored to their former positions if the agreement shall be declared invalid, and when, if such shall be the result, some of those rights will be wholly lost. I think the order refusing to allow the amendment was right, and that it should be affirmed.

CLARKE, J., concurs.