WILLIAM E. HANNA, Respondent, v. GERALDINE E. MITCHELL and HOWARD E. MITCHELL, Appellants.

First Department, July 14, 1922.

Bills and notes — action against maker and payee by subsequent holder — maker not allowed to amend answer so as to allege that she was accommodation maker where original answer admitted delivery to subsequent holder for value before maturity — payee not allowed to amend answer so as to plead counterclaim against intermediate holder — doctrine that court will not look into merits on motion to amend pleading qualified — plaintiff entitled to summary judgment — Rules of Civil Practice, rule 113, not invalid on ground that Laws of 1921, chap. 370, amending Laws of 1920, chap. 902, authorizing making of rules, was delegation of legislative power — rule 113 does not deprive party of right to trial by jury — said rule not inconsistent with Civil Practice Act, §§ 423, 425, providing for trial of issues of fact by jury.

In an action on a promissory note brought by a subsequent holder against the maker and payee, the maker should not be allowed to amend her answer so as to allege that she made the note for the accommodation of the payee and without receiving any value therefor, where in her original answer she admitted that the note was indorsed and delivered. to the first transferee,. who is not a party to the action, before maturity and for value, and there was no allegation of a diversion of the note or any other fact alleged that would make the title of the person who negotiated it defective, for the facts sought to be alleged in the amended answer were insufficient to constitute a defense.

The payee should not be allowed to amend his answer so as to set up a counterclaim against the first transferee based on an alleged misappropriation by the transferee of partnership funds on the dissolution of a partnership between the two, prior to the execution of the note.

While it is true that on a motion to amend a pleading the court will not, as a rule, look into the merits,. but will allow the party to put his pleadings into such shape as will enable him to raise and have determined at the trial any question affecting his interest, this rule is qualified by the requirement that the application to be allowed to amend is made in good faith, and that injustice will not be. done to the adverse party. Where it is apparent that there is no merit in the. proposed amendment and it is sought for the purpose of delaying a cause to which there is no defense, the application should be denied.

Summary judgment should be granted the plaintiff in an action on a promissory note where the answer merely denies certain essential allegations on information and belief and as to others denies that the defendant has any knowledge or information sufficient to form a belief, and the plaintiff proves its cause of action on the motion by affidavits presented while the defendant rests solely on the denials in the answer and offers no proof in support thereof.

Rule 113 of the Rules of Civil Practice is not void on the ground that chapter 370 of the Laws of 1921, amending chapter 902 of the Laws of 1920, under the authority of which the rule was made, was an attempt to delegate legislative powers, for the power to make rules of practice is a judicial power inherent in, and expressly conferred upon, the Supreme Court, and said act creating the convention to adopt the Rules of Civil Practice merely provided a method and means

whereby the court could conveniently and expeditiously exercise its judicial duty, and was in no sense a delegation of the legislative power by the Legislature.

The object of said rule is not to deprive a party of the right to a jury trial of an issue of fact, but to require a defendant, when it is claimed that in fact he has no honest defense and no *bona fide* issue, to show that he has at least an arguable defense, that he has not merely taken advantage of a technicality in the form of pleading for the purpose of delaying the enforcement of an honest claim to which, in fact, he has no colorable defense, and the only function exercised by the court by virtue of said rule is to determine whether in fact there is an issue for trial, and, therefore, said rule is not invalid on the ground that it deprives a defendant of his right to trial by jury.

Said rule is not invalid on the ground that it is inconsistent with sections 423 and 425 of the Civil Practice Act, providing that certain issues must be tried by a jury, for said sections do not deprive the court of the power to ascertain whether there is in truth an issue of fact to be tried.

APPEAL by the defendants, Geraldine E. Mitchell and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 10th day of March, 1922, denying defendants' motion for leave to serve amended answers, and also from an order entered in said clerk's office on the same day granting plaintiff's motion to strike out the answers and for summary judgment.

*Wellman, Smyth & Scofield* [*Frederick W. Bisgood* of counsel; *Herbert C. Smyth* with him on the brief], for the appellants.

*Everett, Clarke & Benedict* [*W. Montague Geer, Jr.,* of counsel], for the respondent.

*John Godfrey Saxe,* delegate for First Judicial District to Convention of Justices and Lawyers, *amicus curiæ.*

PAGE, J.:

The action is on a promissory note made by the defendant Geraldine E. Mitchell payable to the order of the defendant Howard E. Mitchell which it is admitted, by failure to deny, was before maturity indorsed by said Howard E. Mitchell in blank and delivered, so indorsed, to one Cramp for value received. The complaint further alleges that Cramp before maturity transferred and delivered the note for value received to the Pennsylvania Company for Insurance on Lives and Granting Annuities (hereinafter designated the Insurance Company), and that the Insurance Company after maturity, for value, duly assigned, transferred and delivered said note to plaintiff, who became and now is the owner and holder thereof; that at maturity the said note was presented for payment at the time and place where payable and payment thereof duly demanded but payment was refused and the note was not paid and that the same was duly protested for non-payment and due notice thereof given to the defendant Howard E. Mitchell; that the cost

of said presentment, protest and notice was one dollar and thirty-three cents, which said Insurance Company paid; that no part of said note or protest fees has been paid. The only denials in the answer that would raise a triable issue are the denial on information and belief of the transfer of the note by Cramp to the Insurance Company and the denial of any knowledge or information sufficient to form a belief of the cost of protest and the assignment of the note to the plaintiff.

The defendants moved to be allowed to amend their answers: Geraldine E. Mitchell to allege as a separate defense that she made the note as an accommodation for Howard E. Mitchell and without receiving any value therefor, and for the purpose of loaning her name to the said Howard E. Mitchell, and on information and belief that said note was transferred to the Insurance Company and to the plaintiff without any value or consideration therefor and after maturity thereof, and that the Insurance Company and the plaintiff, at the time of receiving said note, each had knowledge of the fact that said note was an accommodation note and that she had received no consideration therefor; Howard E. Mitchell moved to amend his answer to include a counterclaim and setoff existing against Cramp. The plaintiff moved to strike out the existing answers and for a summary judgment for the relief demanded in the complaint.

The motions were heard together. Defendants' motions were denied and plaintiff's motion granted. Defendants appeal.

The defendants' motions were properly denied. The defendants admit that the note was indorsed and delivered to Cramp before maturity and for value; therefore, the fact that Geraldine E. Mitchell may have made the note as an accommodation to Howard E. Mitchell would be no defense as against Cramp or one deriving title through him. (Neg. Inst. Law, §§ 3, 52, 55, 91, 97.) There was no diversion of the note or any other fact alleged that would make the title of a person who negotiated it defective. (Id. § 94.) The facts sought to be alleged were insufficient to constitute a defense. (*Horan* v. *Mason, Nos. 1, 2, 3,* 141 App. Div. 89, 91.)

The counterclaim that Howard E. Mitchell seeks to set up would seem to be a cause of action in equity for an accounting between himself and Cramp, who it is alleged were copartners in business prior to May 4, 1914, at which date the copartnership was dissolved: that no accounting has been had; upon information and belief that during the continuance of the partnership and prior to the dissolution Cramp had withdrawn and diverted to his own use large sums of money from the partnership assets greatly in excess of the proportion thereof to which he was entitled. An accounting is not demanded, for of course it could not be had in this action to which Cramp was not a party. The defendant Howard E. Mitchell

could not sue Cramp at law on this statement of facts in the counter-claim, for there had been no accounting, balance struck and promise to pay such amount. (*Cummings* v. *Morris*, 25 N. Y. 625, 629.)    The note clearly did not arise out of partnership transactions, for it is alleged that the partnership was dissolved in May, 1914, and the note was made April 27, 1920.    While it is true that on a motion to amend a pleading the court will not, as a rule, look into the merits, but will allow the party to put his pleadings in such shape as will enable him to raise and have determined at the trial any question affecting his interest, this rule is qualified by the requirement that the application to be allowed to amend is made in good faith, and that injustice will not be done to the adverse party.    (*Muller* v. *City of Philadelphia*, 113 App. Div. 92, 96; *Kursheedt Manufacturing Co.* v. *Rosenzweig*, 189 id. 217, 220.)    Where it is apparent that there is no merit in the proposed amendment and it is sought for the purpose of delaying a cause to which there is no defense, the application should be denied.

The appellants further contend that rule 113 of the Rules of Civil Practice is void.    *First*. Because chapter 370 of the Laws of 1921,[*] under authority of which the rule was made, was an attempt to delegate legislative powers and is, therefore, invalid.    *Second*. Because rule 113 denies to defendants the right to trial by jury.    *Third*. Because rule 113 is inconsistent with the Civil Practice Act.

We will consider these propositions in the order in which they are stated.

The first proposition assumes that the right to adopt rules regulating the practice in the Supreme Court is a legislative power which the Legislature cannot delegate to the justices of the Supreme Court. By chapter 4 of the Colonial Laws of the Colony of New York passed May 6, 1691 (1 Colonial Laws of New York [Comp. Stat. Rev. Comm.], 226, 229, 230), there was established among others the Supreme Court " Impowered and Authorized to have Cognizance, of all pleas, Civill Criminall, and Mixt, as fully & amply to all Intents & purposes whatsoever, as the Courts of Kings Bench, Comon Pleas, & Exchequer within their Majestyes Kingdome of England, have or ought to have."    It was further provided in said act: "AND BE IT FURTHER ENACTED by the Authority aforesaid that all and every of the Justices or Judges of the severall Courts before-mentioned be and are hereby sufficiently Impowered, to make, order, and Establish, all such Rules and Orders for the more orderly practizeing & proceeding in their said Courts, as fully and amply to all intents and purposes whatsoever as all or any of the said Judges of the severall Courts of the Kings Bench, Comon Pleas & Exchequer in England Legally doe."    This act was con-

---

[*] Amdg. Laws of 1920, chap. 902. — [REP.

tinued from time to time. (See Colonial Laws, chaps. 28, 54, 62; 1 Colonial Laws of New York [Comp. Stat. Rev. Comm.], 303, 306, 307, 359, 380; Ordinance of May 15, 1699; 2 R. L. Appendix No. V, pp. X–XII; Street's New-York Council of Revision, p. 29.) The Constitution of 1777 did not continue the Supreme Court and the Court of Chancery in express terms. It continued their existence by recognizing the chancellor and judges of the Supreme Court (Arts. 3, 24, 25, 27, 32) and further by the adoption of the common law of England and the acts of the Legislature of the Colony of New York, as together did form the law of said colony on April 19, 1775, ."subject to such alterations and provisions as the Legislature of this State shall, from time to time, make concerning the same." (Art. 35.) The Constitution of 1821 continued the Supreme Court but reduced the number of justices to three (Art. 5, § 4) and further provided that such parts of the common law and of the acts of the Legislature of the Colony of New York as together did form the law of said Colony on April 19, 1775, which had not since expired, or been repealed, or altered, should be and continue the law of this State subject to such alterations as the Legislature shall make concerning the same. (Art. 7, § 13.) Thus was continued the Supreme Court with the same jurisdiction and inherent powers as that court possessed during the colonial period. The practice and procedure in that court was prescribed and regulated by rules made by the justices of the court. Dissatisfaction arose with the practice in the courts which was based upon common-law pleadings and also with the separate jurisdiction of the Court of Chancery, and in 1846 the Court of Chancery was abolished and it was provided: " There shall be a Supreme Court having general jurisdiction in law and equity." (Const. of 1846, art. 6, § 3.) The Legislature was also given power to fix the times and places of holding the terms of the Court of Appeals and of the General and Special Terms of the Supreme Court within the several districts and of the Circuit Courts and Courts of Oyer and Terminer within the several counties. (Id. § 9.) It was also therein provided that: " The Legislature, at its first session after the adoption of this Constitution, shall provide for the appointment of three commissioners, whose duty it shall be to revise, reform, simplify and abridge the rules of practice, pleadings, forms and proceedings of the courts of record of this State, and to report thereon to the Legislature, subject to their adoption and modification from time to time." (Id. § 24.) This Constitution also provided: " The Legislature shall have the same powers to alter and regulate the jurisdiction and proceedings in law and equity as they have heretofore possessed." (Id. § 5.) The same

provision was made for the continuance of the common law and acts of the Colonial Legislature as contained in the two preceding Constitutions, with a provision that all such parts of the common law and of said acts or parts thereof as were repugnant to this Constitution were thereby abrogated. (Id. art. 1, § 17.)

Under the powers conferred by article 6, section 24, the Legislature appointed a Commission which drafted and reported, and the Legislature adopted the Code of Procedure. The first report of this Commission recommended the adoption of " § 389. The present rules and practice of the courts, in civil actions, inconsistent with this act, are abrogated; but where consistent with this act, they shall continue, until the further action of the Legislature." This became section 389 of the Code of Procedure (Laws of 1848, chap. 379) as follows: " The present rules and practice of the courts in civil actions, inconsistent with this act, are abrogated; but where consistent with this act, they shall continue in force subject to the powers over the same, of the respective courts, as they now exist. " When, however, the final draft of the Code of Procedure was passed by the Legislature (Laws of 1849, chap. 438) we find that section 389 had become section 469 which read: " The present rules and practice of the courts, in civil actions, inconsistent with this act, are abrogated; but where consistent with this act, they shall continue in force subject to the power of the respective courts to relax, modify, or alter the same." Section 470 of the Code of 1849, so far as applicable to this consideration, read: " The judges of the Supreme Court shall meet in general session at the Capitol, in the city of Albany, on the first Wednesday of August, 1849, and at such session make general rules to carry into effect the provisions of this act, and such other rules as they deem proper not inconsistent with this act. The rules so made shall govern the Superior Court of the City of New-York, the Court of Common Pleas of the City and County of New-York, and the County Courts, so far as the same may be applicable." Thus it would appear that although the Commissioners at first recommended that the making of the rules be reserved to the Legislature, when final action was taken the Legislature merely passed a Code which laid down broad general principles of practice and procedure, and the power to make rules of practice and procedure not inconsistent with the Code was left where it had always resided, with the justices of the Supreme Court. By chapter 479 of Laws of 1851 said section was amended so as to provide for a similar meeting on the first Wednesday in August, 1852, and every two years thereafter. By chapter 392 of the Laws of 1852 this section was amended to include the judges of the Superior Court of the City of New

York and of the Court of Common Pleas for the City and County of New York and further to provide for a meeting of the judges on the first Wednesday in August, 1852, and every two years thereafter and at such sessions said judges were to revise their general rules and make such amendments thereto, and such further rules not inconsistent with this Code, as may be necessary to carry it into effect. Such conventions seem to have been held from time to time and the practice and procedure in the courts was regulated by the Code of Procedure and the rules of court, and such has been the practice since that time with the changes hereinafter noted. The Constitution prepared by the Convention of 1867 was rejected by the People except the judiciary article which was separately submitted and adopted in 1869 and became article 6 of the Constitution. By section 6 the existing Supreme Court, with general jurisdiction in law and equity, was continued, " subject to such appellate jurisdiction of the Court of Appeals as now is or may be prescribed by law." The last clause of section 8 preserved the power of the Legislature to alter and regulate the jurisdiction and proceedings that appeared in section 5 of article 6 of the Constitution of 1846. Sections 9 and 24 of article 6 of that Constitution were omitted from the amendment of 1869.

In 1870 the Legislature passed an act relating to the Supreme Court and to the election of a judge of the Court of Common Pleas in and for the City and County of New York (Laws of 1870, chap. 408), section 13 of which reads as follows: "All rules of the Supreme Court now in force not inconsistent with the Constitution or any statute of the State shall remain in force until abolished or altered by the General Term justices, the chief judges of the Superior Courts of cities, the chief judge of the Court of Common Pleas of the City of New York and of the City Court of Brooklyn in convention assembled at the Capitol in the city of Albany. A convention of such justices and chief judges shall be held at the place aforesaid, on the first Wednesday in August, eighteen hundred and seventy, and every two years thereafter; and such convention shall revise, alter, abolish and make rules, which shall be binding upon all courts of record so far as they may be applicable to the practice thereof. A majority of said justices shall constitute a quorum, to do business in the premises, whether said chief judges shall be present or absent * * *." In the Code of Remedial Justice and in the Code of Civil Procedure (Laws of 1876, chaps. 448, 449, as amd. by Laws of 1877, chap. 416) section 4 provided: " Each of those courts [among which is the Supreme Court] shall continue to exercise the jurisdiction and powers now vested in it by law, according to the course and practice of the court, except as otherwise prescribed in this

act," except that the word "and" between the words "law" and "according" was omitted in 1877 so as to make the section read as herein quoted, and section 17 reads as follows: "The General Term justices of the Supreme Court, and the chief judges of the Superior City Courts, must meet in convention, at the Capitol, in the city of Albany, on the first Wednesday of October, eighteen hundred and seventy-seven, and every second year thereafter. The Convention must establish rules of practice, not inconsistent with this act, which shall be binding upon all courts of record, except the Court for the Trial of Impeachments and the Court of Appeals. A majority of the members of the Convention constitute a quorum. The rules thus established are styled in this act, 'The General Rules of Practice.'" The amendment of 1877 changed the meeting of the convention from the first Wednesday of August, 1876, to the first Wednesday of October, 1877, otherwise section 17 was the same in both Codes.

The judiciary article, or article 6 of the Constitution, was very materially changed by the Constitution adopted in 1894. The Superior Court of the City of New York, the Court of Common Pleas for the City and County of New York, the Superior Court of Buffalo and the City Court of Brooklyn were abolished and the jurisdiction theretofore exercised by those courts was vested in the Supreme Court on January 1, 1896. The General Terms of the Supreme Court and of the other courts hereinabove mentioned were also done away with, and an Appellate Division of the Supreme Court was erected in each judicial department. To meet this new condition the Legislature amended section 17 of the Code of Civil Procedure by inserting in place of the said justices and chief judges the justices assigned to the Appellate Division of the Supreme Court, and directing them to meet on the fourth Tuesday in October, 1895, otherwise the section so far as here material was unchanged. (Laws of 1895, chap. 946.) In 1909 this section was transferred to the Judiciary Law. (Consol. Laws, chap. 30 [Laws of 1909, chap. 35], §§ 93, 94.)* This remained the law until the adoption of the Civil Practice Act (Laws of 1920, chap. 925), at which time the Legislature passed "An act to provide for a convention, representing the judiciary and the bar, to consider and adopt rules of civil practice, and making an appropriation therefor." (Laws of 1920, chap. 902; amd. by Laws of 1921, chap. 370.)† This convention was to meet at noon of the second Tuesday of June, 1920, at the Capitol in the city of Albany, to formulate and adopt suitable rules of practice not inconsistent with the Judiciary Law nor with the Civil

---

* Since amd. by Laws of 1921, chap. 302.— [REP.

† See Laws of 1922, chap. 249.— [REP.

Practice Act, which shall be binding upon all the courts of this State and all the justices and judges thereof, except the Court for the Trial of Impeachments and the Court of Appeals. The members of such convention it was provided should be one justice of the Appellate Division of each judicial department, to be chosen by the justices assigned to such Appellate Division, one trial justice of the Supreme Court in each judicial district, to be chosen by the justices of the Supreme Court located therein, other than the justices assigned to an Appellate Division, one attorney and counselor at law from each judicial district, to be designated by the Governor, two members of the Board of Statutory Consolidation, to be designated by the chairman, six members of the joint legislative committee on the simplification of civil practice, to be designated by the chairman of such committee, and the Attorney-General. The act further provided that "any member of the convention may participate in the debates and informal votes upon the adoption of rules and votes upon other matters, except that the justices only shall vote on the final adoption of the rules of practice." Therefore, the rules were to be adopted by the justices of the Supreme Court. The action of the other members of the convention was merely advisory.

The number of justices of the Supreme Court had increased from 5 in 1691 to 107 in 1920. As we have seen, from 1691 to 1848 the justices of the Supreme Court made and established the rules governing the practice and procedure in that court, and since 1848 there have been various conventions differing in membership; as the court increased the duty of formulating rules was restricted to the justices of the General Term, associated with the chief judges of other courts of record, and finally to the justices of the Appellate Division. The convention held pursuant to the act of 1920 more nearly approximated the first assembly to formulate rules, for the entire body of the justices were represented by their chosen delegates.

The attention of the Court of Appeals was not called to the act of the Colonial Legislature of 1691, or they would not have stated that "the power to make general rules was given to the Supreme Court by the Revised Statutes." (2 R. S. 199, § 19; *Rice* v. *Ehele*, 55 N. Y. 518, 522.) The power to make rules was inherent in the Courts of Kings Bench, Common Pleas and Exchequer of England, and would have been conferred on the Supreme Court without the express grant of such power contained in the act. As we have shown, the common law of England and the acts of the Colonial Legislature became the law of this State by virtue of the provisions of the Constitution above quoted. This power was exercised by the Supreme Court for 86 years before there was a Legislature of the State of New York, and for 137

years prior to the adoption of title 3 of chapter 1 of part 3 of the Revised Statutes, which contains the section referred to as the source of power. That section was but a legislative recognition of a power that had long existed, which was embodied with other pre-existing laws in the Revised Statutes. The Parliament of England and the Legislature of this State have passed acts regulating practice and procedure in the courts. In England there is no constitutional segregation of the powers of government into the three departments, executive, legislative and judicial, as there is here. The power to make rules governing the practice and procedure in the courts is a judicial and not a legislative power. This was clearly recognized when the Code of Procedure was authorized to be adopted by the Legislature. A change in the Constitution was found necessary to confer the power upon the Legislature.

The Federal Constitution (Art. 3, §§ 1, 2) seems to give greater power to Congress over the proceedings in the Federal courts than is given by the State Constitution to the Legislature, and yet the Supreme Court of the United States said: " Congress might regulate the whole practice of the courts if it was deemed expedient so to do; but this power is vested in the courts; and it never has occurred to any one that it was a delegation of legislative power." (*United States Bank* v. *Halstead,* 10 Wheat. 51, 61.) Presiding Justice VAN BRUNT wrote: " One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been the right to control its order of business and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs. * * * The courts are not the puppets of the Legislature. They are an independent branch of the government, as necessary and powerful in their sphere as either of the other great divisions. And while the Legislature has the power to alter and regulate the proceedings in law and equity, it can only exercise such power in that respect as it has heretofore exercised." (*Riglander* v. *Star Co.,* 98 App. Div. 101, 104, 105; affd., 181 N. Y. 531.) We conclude that the power to make rules of practice is a judicial power inherent in, and expressly conferred upon the Supreme Court; that the act creating the convention to adopt rules of civil practice merely provided a method and means whereby the court could conveniently and expeditiously exercise its judicial duty, and was in no sense a delegation of legislative power by the Legislature.

The second objection raised is that rule 113 denies to the defendant the right to a trial by jury.

**33**

We have had this rule under consideration in *Dwan* v. *Massarene* (199 App. Div. 872) and *General Investment Co.* v. *Interborough Rapid Transit Co.* (200 id. 794) in neither of which was the question raised here directly involved, although in *Dwan* v. *Massarene* we did, in passing, somewhat consider the question.

The theory of the defendants is that inasmuch as section 261 of the Civil Practice Act (Code Civ. Proc. § 500; Code Proc. § 149) authorizes an answer containing a general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief, he has a constitutional right to compel the plaintiff to produce his proof before a jury of twelve men, and although the plaintiff produce his proof before a judge, and the defendant cannot show any fact to controvert the plaintiff's proof, or show that he even has an arguable defense, nevertheless, he is entitled to have the cause put upon the calendar, called for trial, a jury impaneled, plaintiff's proof offered, and a verdict directed by the judge, because the plaintiff's evidence being uncontroverted, there would be nothing to submit to the jury and the case would be disposed of as a question of law. This is exalting form over substance. A judge can determine whether in fact there would be anything to submit to a jury, as well sitting alone as he could with an audience of twelve men sitting in a jury box. The rule applies to a limited class of cases, viz., " an action to recover a debt or liquidated demand arising, 1. on a contract, express or implied, sealed or not sealed; or 2. on a judgment for a stated sum." In construing this rule we have said: " The power is given to the court, but it is needless to say that it must be exercised with care and not extended beyond its just limits. The court is not authorized to try the issue, but is to determine whether there is an issue to be tried. If there is, it must be tried by a jury. Plaintiff's affidavit must state such facts as are necessary to establish a good cause of action. It will not be sufficient if it verifies only a portion of the cause of action, leaving out some essential part thereof. It must state the amount claimed, and his belief that there is no defense to the action. The defendant must show that he has a *bona fide* defense to the action, one which he may be able to establish. It must be a plausible ground of defense, something fairly arguable and of a substantial character. This he must show by affidavits or other proof. He cannot shelter himself behind general or specific denials, or denials of knowledge or information sufficient to form a belief. He must show that his denial or his defense is not false and sham, but interposed in good faith and not for delay." (*Dwan* v. *Massarene, supra,* 879.)

In the instant case the action is on a promissory note in writing. The making of the note, the indorsement thereof by the payee in blank and its delivery to one Cramp for value received are admitted. On information and belief the defendants deny " that thereafter and before maturity the said Cramp, to whom said note was delivered as aforesaid, transferred and delivered it for value received to The Pennsylvania Company for Insurance on Lives and Granting Annuities, a Pennsylvania corporation, which became the owner and holder thereof." And they deny any knowledge or information of the allegation of the 10th paragraph that the Insurance Company for value duly assigned, transferred and delivered said promissory note and all claims, causes of action and rights to recover thereon. Upon the motion plaintiff presented the affidavit of Alice W. Cramp that she received the note from her husband, Theodore W. Cramp, in consideration of the sum of $2,500 which she received from the Insurance Company and that the Insurance Company holds the note as security for the repayment of said $2,500, and the affidavit of the second assistant treasurer of the Insurance Company that on May 4, 1920, which was before maturity, the note was delivered to the Insurance Company as security for the obligation of Alice W. Cramp to the Insurance Company for $2,500 which has never been paid. There was also presented the affidavit of the plaintiff that he is the present owner and holder of the note, that the same was assigned to him by the Insurance Company. A copy of the written assignment is annexed, the original of which he alleges is in his attorney's possession. The amount claimed is $2,501.33, but he waives the $1.33 protest fees, and asks for judgment for $2,500 with interest. Also the affidavit of the plaintiff's attorney was presented, stating that the original note and assignment thereof to plaintiff was in his possession, and he offers to present the same to the court. The defendants presented no affidavit or other proof to controvert the proof presented by the plaintiff, but rest upon the denials in their answer and their alleged constitutional rights. The plaintiff proved his cause of action. The defendants offer nothing in answer. Under such circumstances the plaintiff was entitled to judgment.

Rule 113 is substantially the same as rules 80 and 81 of the Supreme Court of New Jersey, which were held not an infringement of the right to a trial by jury. (*Eisele & King* v. *Raphael*, 90 N. J. L. 219, 223; *Coykendall* v. *Robinson*, 39 id. 98.) Rule 73 of the General Rules of Practice of the Supreme Court of the District of Columbia provides: " In any action arising *ex contractu*, if the plaintiff or his agent shall have filed, at the time of bringing his action, an affidavit setting out distinctly his cause of action, and the sum he claims to be due, exclusive of all set-offs and just grounds of

defence, and shall have served the defendant with copies of his declaration and of said affidavit, he shall be entitled to a judgment for the amount so claimed, with interest and costs, unless the defendant shall file, along with his plea, if in bar, an affidavit of defence denying the right of the plaintiff as to the whole or some specified part of his claim, and specifically stating also, in precise and distinct terms, the grounds of his defence, which must be such as would, if true, be sufficient to defeat the plaintiff's claim in whole or in part. And where the defendant shall have acknowledged in his affidavit of defence his liability for a part of the plaintiff's claim as aforesaid the plaintiff, if he so elect, may have judgment entered in his favor for the amount so confessed to be due."

The effect of this rule is the same as rules 113 and 114 of our Rules of Civil Practice. The Supreme Court of the United States, on writ of error upon a judgment granted under this rule, said: " There is but one element in this contention — the right of a jury trial. * * * If it were true that the rule deprived the plaintiff in error of the *right* of trial by jury, we should pronounce it void without reference to cases. But it does not do so. It prescribes the means of making an issue. The issue made as prescribed, the right of trial by jury accrues. The purpose of the rule is to preserve the court from frivolous defenses and to defeat attempts to use formal pleading as means to delay the recovery of just demands. Certainly a salutary purpose and hardly less essential to justice than the ultimate means of trial. * * * It would seem a logical result of the argument of plaintiff in error that there was a constitutional right to old forms of procedure, and yet it seems to be conceded that Congress has power to change them, even to the enactment of rule 73. The concession of that power destroys the argument based on the Constitution, and whether Congress exercised the power directly or delegated it to the Supreme Court of the District of Columbia can make no difference." (*Fidelity & Deposit Co.* v. *United States,* 187 U. S. 315, 319–321.) And again that court said: " The command of the Seventh Amendment that ' the right of trial by jury shall be preserved ' does not require that old forms of practice and procedure be retained. * * * It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. * * * No one is entitled in a civil case to trial by jury unless and except so far as there are issues of fact to be determined. It does not infringe the constitutional right to a trial by jury, to require, with a view to formulating the issues, an oath by each party to the facts relied upon." (*Ex parte Peterson,* 253 U. S. 300, 309, 310. See, also, *Hunt* v. *Lucas,* 99 Mass. 404.)

In England a rule of similar effect to rules 113 and 114 has been adopted (Order XIV, rule 1, Rules of Supreme Court) and enforced where it is disclosed that the defendant has no arguable defense (*Anglo Italian Bank* v. *Wells*, 38 L. T. Rep. 197, 199; *Jacobs* v. *Booth's Distillery Co.*, 85 id. 262), and denied if the defendant showed that he had a triable issue of fact. (*Codd* v. *Delap*, 92 L. T. Rep. 510.)

It is not the object of this rule to deprive any one who has a *right* to a jury trial of an issue of fact, but to require a defendant, when it is claimed that in fact he has no honest defense and no *bona fide* issue, to show that he has at least an arguable defense, that he has not merely taken advantage of a technicality in the form of pleading for the purpose of delaying the enforcement of an honest claim to which in fact he has no colorable defense. The court does not try the issues but ascertains whether in fact there is an issue. The courts of this State have held that a sham affirmative defense may be stricken out on motion, that a denial of any knowledge or information sufficient to form a belief of facts presumptively within the defendant's knowledge, or being a public record of which he was charged with notice, could be so stricken out. A corporation cannot defend an action on a promissory note or other evidence of debt for the payment of money, unless with the answer was served an order of a judge directing the issue to be tried. (Code Civ. Proc. § 1778.)\* Yet none of these authorizations for a judgment where it appeared there was in truth no defense, although technically it had been alleged, was thought to take away the constitutional right to a jury trial. But overruling *People* v. *McCumber* (18 N. Y. 315, 323, 325) the Court of Appeals held that an answer containing a general denial could not be stricken out on the theory that under the common-law system the general issue could not be stricken out as sham although shown by affidavit to be false (*Wayland* v. *Tysen*, 45 N. Y. 281), and a denial of any knowledge or information sufficient to form a belief was also held to be immune from attack, and within the protecting ægis of the Constitution. (*Neuberger* v. *Webb*, 24 Hun, 347.) Under the common law as administered in England prior to our separation the pleas of the general issue could be struck out if shown to be false. (*Phillips* v. *Bruce*, 6 M. & S. 134; *Shadwell* v. *Berthoud*, 5 B. & Ald. 750, and note; *Vincent* v. *Groome*, 1 Chitty, 182.) In *Coykendall* v. *Robinson* (39 N. J. L. 98–101) the court unanimously said: " At common law, the judges repeatedly exercised, in a great variety of cases,

---

\* These provisions have been repealed.   (See Civ. Prac. Act, §§ 252, 1577.)— [REP.

the power to strike out sham pleas [citations]. This rule was applied to the general issue, as well as to other pleas, where it appeared to be a sham plea [citations]. No reason can be assigned why a defendant should be permitted to shelter himself from the power of the court to strike out a false plea, by taking refuge under the general issue. It is clear that the right, which a defendant had at common law, to have the issue of fact tried by a jury, was subject and subordinate to the power of the court to strike out a false plea. This practice having been fully established in the common law, no invasion was committed of the right of jury trial by enacting it in the form of a statute. Notwithstanding the exercise of the right to strike out, jury trial is preserved and upheld inviolate as it existed when the Constitution was adopted. * * * The right to strike out having existed before the formation of our Constitution, the requirement by statute, since that time, of an affidavit to the plea, cannot defeat or take away the power to strike it out. The affidavit was intended to be in aid of the power of the court to prevent sham pleading, not to interfere with, much less wholly to destroy and take away that beneficial power. While this power can be clearly maintained, it should be exercised with care, and not extended beyond its just limits. The inquiry is simply whether there is, in truth, any question of fact to try, and if not, if the defense is a mere pretense, it should be summarily swept away."

What we have said thus far answers the third point of appellants' attack, that rule 113 is inconsistent with the Civil Practice Act, their argument being that section 422 of the Civil Practice Act defines an issue of fact and sections 423 and 425 provide that such an issue must be tried by a jury.

As we have already stated, the requirement that an issue of fact in the actions enumerated in section 425, must be tried by a jury does not deprive the court of the power to ascertain whether there is in truth an issue of fact to be tried. To say that a false denial, which defendants are unable to justify, must nevertheless put the plaintiff to his common-law proof before a jury, although the result would be a directed verdict in plaintiff's favor as a matter of law, is to exalt the shadow above the substance.

That this rule has worked a substantial reform in practice and greatly relieved an overburdened trial calendar has been demonstrated by experience.

The orders should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Orders affirmed, with ten dollars costs and disbursements.