**IN RE: PETITION OF FLORIDA STATE BAR ASSOCIATION FOR THE ADOPTION OF RULES FOR PRACTICE AND PROCEDURE.**

21 So. (2nd) 605                                    January Term, 1945
March 9, 1945                                                En Banc

TERRELL, J.:

The Legislature of 1943 enacted Chapter 21995, the title and Section One of which are as follows:

"An Act To Authorize the Supreme Court of Florida to Prescribe Rules, Forms of Process, Writs, Pleading, Motions and the Practice and Procedure in Actions Either at Law or in Equity and in Statutory and Extraordinary Proceedings in the Circuit Courts and Civil Courts of Record and County Courts of the State of Florida.

"Section 1. The Supreme Court of the State of Florida shall have the power to prescribe from time to time the rules, forms of process, writs, pleadings, motions, and the practice and procedure in actions at law or in suits in equity, as well as in all statutory and extra-ordinary forms of action in the Circuit Courts, Civil Courts of Record and County Courts, of the State of Florida. Such rules shall not abridge, enlarge or modify the substantive rights of any litigant."

Pursuant to the provisions of said Act, the Florida State Bar Association petitions this Court to promulgate rules of civil procedure for the government of the circuit courts, civil courts of record, and the county courts, patterned after the federal rules of civil procedure in so far as not in conflict with the Constitution of Florida. It is contended (1) that necessity exists for the promulgation of such rules, and (2) if not inherently authorized to do so, the quoted act is ample authority for an affirmative answer to the petition.

As to the necessity for new rules of procedure, the point is convincingly urged and it is not challenged. In fact, opposing counsel admit that the time for an improved procedure is overdue so we deem it unnecessary to treat the

point. This point disposed of, we are next confronted with the validity of Chapter 21995 and the power vested in this Court by it. The question is one of procedural law as affected by the boundary that separates legislative, executive, and judicial power. It is not concerned with substantive law. In its broader aspect, some of the books say that procedural law has to do with two classes of rules, those by which courts function from day to day and those by which litigants enforce their rights through the medium of a lawsuit. *Section Four, Article V of the Constitution recognizes the power of the Court to promulgate such rules.*

Sections 20 and 21, Article III of the Constitution recognize the power of the Legislature to enact laws "regulating the practice of courts of justice." Under the power so granted, the Legislature has repeatedly enacted statutes affecting court procedure and this Court has consistently followed them and refused to prescribe others inconsistent therewith. Keen v. State, 89 Fla. 113, 103 So. 399; State ex rel. Ross v. Call, 39 Fla. 504, 22 So. 748; Bryan v. State, 94 Fla. 909, 114 So. 773. In petition of the State Bar Association, 134 Fla. 851, 186 So. 280, and also same title, 145 Fla. 223, 199 So. 57, and petition of the Jacksonville Bar Association, 125 Fla. 175, 169 So. 674, we had another phase of the question before us and approved a like rule. Some of these cases in terms recognize the inherent power of constitutional courts to prescribe necessary rules to exercise their jurisdiction but no area is defined for the exercise of that power. Since the Constitution recognizes the power of the Legislature to enact laws "regulating the practice of courts of justice," it may be safely said that so long as reasonably exercised, the regulation will have the approval of this Court. State v. Board of Public Instruction, 126 Fla. 142, 170 So. 602. It is pertinent to point out here that in 1861 by Chapter 1096, in 1868 by Chapter 1626, and in 1873 by Chapter 1938, now paragraphs one, two, three, four, and five, Section 25.03, Florida Statutes of 1941, the Legislature vested in this Court powers broader than those vested by Chapter 21995.

The Constitution at the time of the enactment of the last numbered statutes gave this Court supervisory jurisdiction

over all the courts in our judicial system and authorized it to prescribe rules for their governance. In 1870, The Legislature enacted Chapter 1815, effective July 1 of that year providing for code practice similar to the New York Code. Chapter 1815 was amended by Chapter 1832, Acts of 1871, and by Chapters 1871 and 1872 of the Acts of 1872 and was then repealed by Chapter 1938, Acts of 1873, effective June 1, 1873. In other words, we tried a code practice for three years and then returned to our former method of procedure.

At its first session, this Court promulgated rules for practice before it and the circuit courts. 1 Fla. 7. In 14 Fla. 3, 35 Fla. 3, and 38 Fla. 17, we find this Court promulgating rules of practice before all the courts of this State in compliance with the Acts cited in the preceding paragraph. In In Re: Amended Rule, 132 Fla. 331, we find this Court prescribing a rule for the admission of attorneys to practice law in compliance with Chapter 10175, Acts of 1925. In 107 Fla. 21, 136 Fla. 907, 139 Fla. 903, 145 Fla. 810, and 148 Fla. 761, we find this Court amending sua sponte or in response to Chapter 13870, Acts of 1929, one or all of its rules of procedure and in 122 Fla. 881, we find a complete revision of the common law rules for practice in the circuit courts. The latter were promulgated at the instance of the State Bar Association.

So this Court has approached the rule making power in a pragmatic way and has not become involved in the niceties of such concepts as inherent power to make rules or the delegation of the rule making power. It is idle to contend that there is not an area in which constitutional courts may not exercise the inherent or implied power to prescribe rules of procedure. Section 4 of Article V and Section 20 and 21 of Article III of our Constitution warrant this conclusion. We have repeatedly prescribed rules of procedure and we have just as repeatedly recognized the power of the Legislature to do so. We have also acted in response to such power delegated to us by the Legislature. The dividing line between court and legislative power is not material here.

Under our Constitution strictly legislative powers may not be delegated except as they pertain to municipalities but

the rule making power has not been considered as strictly a legislative power. In the early history of this country it was generally exercised by the Legislature in most of the States for the same reason it has been exercised by Congress as to the Federal Courts. Under the Federal system all courts are statutory except the Supreme Court and being so, Congress regulates their procedure. Even the Supreme Court has recognized the power of Congress to prescribe rules for its procedure. Wayman v. Southard, 10 Wheaton (U.S.) 1, 6 L. Ed. 253; Beers v. Haughton, 9 Pet. (U.S.) 329, 9 L. Ed. 145. The Supreme Court has also responded the power vested in it by Congress to prescribe rules of procedure, Federal Rules of Civil Procedure being the outstanding example.

In the Federal and State judicial systems, there are areas in which executive, legislative, and judicial powers overlap and in some cases are exercised jointly. The Constitution of Florida repeatedly authorizes the joint exercise of these powers. Section 15 of Article IV requires removals to be made by the Governor and the Senate. Section 13 of Article IV authorizes the Governor to secure this Court's opinion as to the exercise of certain of his duties. Section 28 of Article III contemplates a joint exercise of the legislative process. Other provisions of the Constitution might be enumerated in which the power properly exercised by one of the three departments is permitted to be exercised in whole or in part by another.

It is easy to generalize about the boundary of legislative, executive, and judicial power but pointing out the arbitrary point where one begins and the other leaves off is a very different matter. Historically what constitutes executive, legislative, or judicial power has been determined in the light of the common law and what these powers were considered to be at the time of the adoption of the Constitution. The Constitution defines the three powers but makes no attempt to compartmentalize them. In Hanna v. Mitchell, 196 N.Y.S. 43, 202 App. Div. 504, the Supreme Court held that the Legislature might regulate practice of the courts if it deemed expedient to do so, but, said the Court, this power is vested in

the courts and it never has occurred to any one that it was a delegation of legislative power.

In In re: Constitutionality of Statute Empowering Supreme Court to promulgate Rules, 204 Wis. 501, 236 N. W. 717, the Supreme Court construed an Act of that State very similar to the Act under consideration. It held that the power to regulate procedure at the time of the adoption of the Constitution was considered to be essentially a judicial power, or at least not a strictly legislative power, and that there existed no constitutional objection to the delegation of it to the courts by the Legislature. The court in terms rejected the contention that the Act was unconstitutional because it was a delegation of legislative power and because it attempted to vest authority in the Supreme Court which the Constitution had placed in the inferior courts. The statute construed and the points raised in the Wisconsin case are so similar to those raised in the case at bar that we might with confidence rest the point on what was said in that case. See also State v. Roy, 40 N. M. 397, 60 Pac. (2nd) 646, 110 A.L.R. 1; State ex rel. Foster-Wyman v. Superior Court, 148 Wash. 1, 267 Pac. 770.

Other features of Chapter 21995 are assaulted but we do not quote them nor do we consider it necessary to devote space to them. Section 2 provides that any rule adopted by the Supreme Court shall in no way affect any statute of the State relating to venue or jurisdiction. Section 3 requires that all rules adopted pursuant thereto be reported to the Legislature at its next regular session and that they shall take effect after the close of the session. A provision similar to this was upheld in the Wisconsin case heretofore discussed. Section 4 requires that all statutes repealed or superseded by rules of this Court be so designated. Section 5 authorizes this Court to modify or amend any rule adopted by it and Section 6 provides that the Act as a whole shall not be construed as an abandonment on the part of the Legislature of its power to enact laws regulating procedure in the courts of this State.

Some of these provisions are ambiguous and some of them are not contemplated in the title to the Act as required by

Section 16 of Article III of the Constitution. In fact, the Act as a whole is inartificially drawn but it is clear from the title and Section 1 that it was the intent of the Legislature to delegate to this Court the power to prescribe "rules, forms of process, writs, pleadings, motions and the practice and procedure in actions at law or in suits in equity, as well as in all statutory and extraordinary forms of action in the circuit courts, civil courts of record, and country courts of the State of Florida." We find nothing in the Constitution to prohibit this.

Aside from the constitutional aspect we are impressed with other and more convincing reasons for delegating the rule making power in this case. The administration of justice is the primary function of the judiciary. Practice and procedure is the vehicle by which justice is orderly administered. Certainly no question is more vital to the public welfare. The Legislature proposes to delegate its function, "regulating the practice of courts of justice," to this Court. The Act of the Legislature is in harmony with the late trends throughout the country; the reason is too evident to require proof. Courts have the facilities, the technical knowledge, and experience which much better equip them for this duty than the Legislature. In such a situation, they should refrain from grounds of self abnegation and embrace the opportunity to prescribe procedure that will make the administration of justice everything that the man of the street has been taught to expect of it. Certainly the responsibility is on some one to do this and the bar is the logical source from which to expect it.

But there is no magic in a grant of power to prescribe rules of practice and procedure unless the bench and bar are actuated by the will to employ it. The best system that can be devised will be fruitless in the hands of a legal profession indifferent to its exercise. Dr. Holdsworth, the eminent English legal historian, says that any system devised should be rigid enough to be workable and flexible enough to adjust itself to the changing needs of society. It is common knowledge that court procedure has not kept step with the times and whether common law or code procedure is the rule, if

not kept modernized, it soon becomes so inbred with legalisms and technical hobbles that it falls short of response to the needs of the public welfare. To say that the legal profession can do nothing about it doesn't make sense. It would be as reasonable to contend that the carpenter can do nothing about it when his tools get dull or that the doctor can do nothing about it when he tries one specific and that fails.

The ideal system of procedure is that which enables the litigant to achieve justice by the most direct, simple, speedy, and inexpensive means possible. Litigants are practical; they know what they want, and they have little patience with what is known as the sporting theory of justice. If they have an urge to satisfy the gambling instinct, they try poker or go to the races. If they want to be entertained, they try the movies; if they want to be instructed, they take the lyceum or the seminar, but when they want justice, they look to the courts and nothing lowers their respect for them so much as having justice delayed or lost in the shuffle while court and lawyers bandy words and befuddle the issues over the interpretation of an antiquated inept rule. All the lawyers this side of Kingdom come cannot explain to him why he came through the wrangle liquidated when he expected to get through justified.

A very learned procedural expert said recently that if democratic processes based on law and order are preserved, we must have a legal system which permits litigants to have their controversies decided rationally and expeditiously in the spirit of fair play minus the shadow boxing camouflage and "by play" prevalent in so many lawsuits. We think the responsibility is on the legal profession to amend and modernize procedure so as to remove this stigma. Procedure is the lawyer's kit; he holds it as trustee of the public and no lawyer should undertake the practice who does not realize that he has a duty to make the judiciary work in response to the public welfare that rises above his economic interest in the profession.

In a democracy like ours, it is not enough that the legal profession be alert to the pattern in which the judiciary must respond to the public welfare. No system of procedure will

718

long suffice that is not flexible enought to conform to the demands of new techniques and changing circumstances. Perhaps a dull sense of professional responsibility and alertness to this has participated a host of administrative and other tribunals that are transacting a·large amount of legal business not nearly so efficiently as the litigants would like but it would be vaporous theorizing to talk about doing away with them and substituting court procedure with no better reputation for performance.

So the situation here is that Section 4, Article V of the Constitution recognizes the power of this Court to prescribe rules of procedure and Sections 20 and 21, Article III of the Constitution recognize the power of the Legislature to enact laws "regulating the practice of courts of justice." There has been no attempt to set boundaries to the power of either nor has there been any clash between legislative and judicial power. We are therefore driven to the conclusion that there can be no constitutional or other objection to the Legislature delegating its power to enact laws "regulating the practice of courts of justice" to this Court. Since we reach this conclusion, the question arises, to what extent an amended procedure should be attempted. The petition prays that our system of common law and equity procedure be abandoned and that the Federal Rules of Civil Procedure be substituted for it.

We do not consider such a change wise or expedient. The Federal Rules of Civil Procedure are geared to a system that is materially different from our State system. The Federal system was designed to provide a uniform system of practice in the Federal District courts and by reason of constitutional, statutory, and other reasons, cannot contemplate rules for the orderly conduct of the variety of suits and statutory proceedings that arise in State practice. If we should adopt the Federal Rules of Civil Procedure, many of them would have no application to our State practice; at the same time there are many proceedings we would be without rules to govern. Rule 81 recites many but not all the proceedings in which the Federal Rules would have no application. The Federal Rules of Civil Procedure do away with the distinction between

common law and equity which our State Constitution preserves. Florida has a practice peculiar to a jurisprudence predicated on the common law and is supported by more than one hundred years of precedents. These precedents settle many points of procedure that should be preserved. Our system of equity practice has been recently revised by the 1931 Chancery Act, is considered adequate, or nearly so, and needs little amendment. The great bulk of the law practice is and always will be done in the State courts and we think it the part of wisdom to amend by that rather than adopt a new system that now bids fair to produce a case system equal to that of any of the States, with the attendant confusion and uncertainty as to what the practice is while it is being done. The Federal Rules of Civil Procedure are still in the experimental stage and must be amended and adjusted to a system materially different from our State system where nine tenths of the practice must be done.

It is accordingly the judgment of this Court that, although some of the rules governing common law practice need revision and modernization, the prayer for substitution of the Federal Rules of Civil Procedure for our system of common law and equity procedure should be and it is denied.

To the end that our common law procedure be improved so that the administration of justice might be expedited and simplied the writer was appointed by the chief justice to prepare such amendements and revisions to the old rules and such new rules as might appear to him practical for the accomplishment of that purpose. The proposals of the writer constitute addenda to this opinion.

It is the consensus of the court that a committee should be selected by the chief justice, composed of lawyers and judges who shall, using these proposals as a basis, make such recommendations on the subject to the court as may appear to them advisable for early consideration and adoption.

CHAPMAN, C. J., TERRELL, BUFORD, THOMAS, ADAMS and SEBRING, JJ., concur.

BROWN, J., concurs in judgment.