In re Constitutionality of Statute Empowering Supreme Court to Promulgate Rules Regulating Pleading, Practice, and Procedure in Judicial Proceedings.

*January 17—May 12, 1931.*

*Francis E. McGovern* of Milwaukee and *Fred M. Wylie* of Madison, *amici curiæ,* for those challenging the constitutionality of the statute.

*Frank T. Boesel* of Milwaukee and *William E. Fisher* of Stevens Point, for the Advisory Committee, *contra.*

WICKHEM, J. The sole question under examination here is the constitutionality of sec. 251.18, Stats. This section provides that "the supreme court of the state of Wisconsin shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of Wisconsin, for the purpose of simplifying the same and of promoting the speedy determination of litigation upon its merits." The section provides that "such rules shall not abridge, enlarge or modify the substantive rights of any litigant. Such rules shall not become effective until sixty days after their adoption by said court." The section further provides that "all statutes relating to pleading, practice and procedure shall have force and effect only as rules of court and shall remain in effect unless and until modified or suspended by rules promulgated pursuant hereto." The section also provides that "no rule modifying or suspending

such statutory rules shall be adopted until the court has held a public hearing" with proper notice. It is further provided that "nothing in this section shall abridge the right of the legislature to enact, modify or repeal statutes or rules relating to pleading, practice or procedure." The section then proceeds to create an advisory committee, whose duty it shall be to observe and to study the administration of justice, and to advise the supreme court of any changes that will simplify procedure and promote the speedy determination of litigation upon its merits.

The principal attack upon the validity of the section is that it constitutes a delegation by the legislature of its legislative power. It is, of course, elementary that we are committed by the constitution to the doctrine of separation of powers. It is also fundamental and undeniable that no one of the three branches of government can effectively delegate any of the powers which peculiarly and intrinsically belong to that branch. In *State ex rel. Mueller v. Thompson,* 149 Wis. 488, 491, 137 N. W. 20, it was held that "power to make law—to exercise the function contemplated by that part of the constitution under consideration—was reserved exclusively to the legislature, and any attempt to abdicate it in any particular field, though valid in form, must, necessarily, be held void." If it were possible to make a sharp division between the executive, legislative, and judicial powers, and if it were true that every power must inevitably fall into one of these three categories, the problem presented by this and like cases would be quite simple. But, as stated by Mr. Chief Justice WINSLOW in *In re Appointment of Revisor,* 141 Wis. 592, 597, 124 N. W. 670:

"It is easy to give general definitions of the three great governmental powers. The legislative power is the power which makes the laws; the executive, the power which enforces them; and the judicial, the power which expounds and applies them. Would that it were as easy to apply these gen-

eral definitions to a concrete case! It is familiar to all who have considered the subject at all that between these several powers, which seem so distinct in their general character, there are great borderlands of power which may be said to approach nearer and nearer until they merge gradually into each other."

It is not only a matter of some difficulty to set precisely the border lines of legislative, executive, and judicial powers, but it also seems quite clear that either by custom or constitutional mandate, or the inherent necessities of the situation, the three branches of government have heretofore exercised other powers than those which, under the doctrine of separation of powers, belong peculiarly and exclusively to them. In *State ex rel. Wis. Inspection Bureau v. Whitman*, 196 Wis. 472, 496, 220 N. W. 929, the court said:

"What it seems to us is demonstrated by the discussion in the *Hampton Case* [276 U. S. 394, 48 Sup. Ct. 348] . . . is that there never was and never can be such a thing in the practical administration of the law as a complete, absolute, scientific separation of the so-called co-ordinate governmental powers. As a matter of fact they are and always have been overlapping. Courts make rules of procedure which in many instances at least might be prescribed by the legislature. When courts through a receiver reach out and administer a great railway system extending from one ocean to the other, they are not exercising a strictly judicial power,—they are exercising an administrative or executive power, which historically has found its way into the judicial department. The constitution reserves to the legislature the power to act as a court in certain cases. When it acts as such it exercises a judicial power. Every executive officer in the execution of the law must of necessity interpret it in order to find out what it is he is required to do. While this interpretation is not final, yet in the vast majority of cases it is the only interpretation placed upon it, and as long as it is acquiesced in it becomes the official interpretation which the courts heed and in which they oftentimes acquiesce as a practical construction."

The fact that the legislature has acquired a power, whether by express constitutional provision or otherwise, does not inevitably characterize the power as purely legislative. The power may be essentially a judicial power and, if it is such a power, it may be delegated to the courts. The question as to what powers are essentially judicial and what legislative is to be solved by ascertaining the definition and scope of such powers at the time the constitution was adopted. "What constitutes judicial power, within the meaning of the constitution, is to be determined in the light of the common law and of the history of our institutions as they existed anterior to and at the time of the adoption of the constitution." *State ex rel. v. Harmon,* 31 Ohio St. 250.

The authorities clearly establish that the power to regulate procedure was at that time considered a judicial power, or at least that it never was considered to be a purely or distinctively legislative power. In 1792 the following significant incident took place in the newly constituted supreme court of the United States:

"The attorney general having moved for information, relative to the system of practice by which the attorneys and counselors of this court shall regulate themselves, and of the place in which rules in causes here depending shall be obtained, the Chief Justice, at a subsequent day, stated, that the court considers the practice of the courts of King's Bench and Chancery in England, as affording outlines for the practice of this court; and that they will, from time to time, make such alterations therein, as circumstances may render necessary." Roscoe Pound, Regulation of Judicial Procedure, 10 Illinois Law Review, p. 171.

In *Wayman v. Southard,* 10 Wheat. (U. S.) 1, 43, 6 Lawy Ed. 253, the court, speaking through Mr. Chief Justice MARSHALL, said:

"The courts, for example, may make rules, directing the returning of writs and processes, the filing of declarations and other pleadings, and other things of the same descrip-

tion. It will not be contended that these things might not be done by the legislature without the intervention of the courts, yet it is not alleged that the power may not be conferred upon the judicial department."

In *Bank of U. S. v. Halstead,* 10 Wheat. (U. S.) 51, 61, 6 Lawy. Ed. 264, the court, speaking through Mr. Justice THOMPSON, declared:

"Congress might regulate the whole practice of the courts, if it was deemed expedient so to do; but this power is vested in the courts; and it never has occurred to any one that it was a delegation of legislative power."

In *Beers v. Haughton,* 9 Pet. (U. S.) 329, 360, 9 Lawy. Ed. 145, the court, speaking through Mr. Justice STORY, said, referring to these earlier cases:

"It was there held that this delegation of power by Congress was perfectly constitutional; that the power to alter and add to the process and modes of proceeding in a suit embraced the whole progress of such suit, and every transaction in it from its commencement to its termination, and until the judgment should be satisfied; . . . And it was emphatically laid down, that 'a general superintendence over this subject seems to be properly within the judicial province and has always been so considered.'"

Coming to the later authorities, it has recently been held in Washington, in the case of *State ex rel. Foster-Wyman Lumber Co. v. Superior Court for King County,* 148 Wash. 1, 5, 267 Pac. 770, that, assuming the right of the legislature to make rules for the court, it does not follow that such action is a legislative function. The court said:

"Not all acts performed by a legislature are strictly legislative in character. A failure to recognize this distinction often gives rise to the belief that one of our lawmaking bodies has abdicated its duty, and attempted to transfer its legislative mantle to the shoulders of another body, not legislative, thereby subverting the purpose of its creation and denying the people of the commonwealth the right to have the laws which govern them enacted by their duly chosen representatives. This distinction was ably pointed out by

the United States supreme court as early as *Wayman v. Southard,* 10 Wheat. 1. . . . Chief Justice MARSHALL, referring to the point, said: 'It will not be contended that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself.' . . ."

In *State ex rel. Patterson v. Bates,* 96 Minn. 110, 115, 104 N. W. 709, 711, the court said:

"As a general proposition of law the legislature cannot delegate legislative powers to the judiciary or require the judges of the various courts of the state to do any acts which are not in their nature judicial. . . . But it is not always easy to discover the line which marks the distinction between executive, judicial, and legislative functions, and when duties of an ambiguous character are imposed upon a judicial officer any doubt will be resolved in favor of the validity of the statute, and the powers held to be judicial. . . . Some confusion in the authorities has resulted from the unwarranted assumption that all the functions of government must necessarily be either executive, legislative, or judicial in their nature, and therefore referred by the constitutional provision to one or the other of the three departments of government. It may very well be true that the duty imposed by a statute such as the one under consideration is neither the one nor the other. The constitution has referred legislative power to the legislature, executive power to the executive, and judicial power to the judiciary; but it has nowhere declared that all the powers which are necessary for the proper government of the commonwealth are included in this classification. . . . The constitution does not attempt to make an abstract distribution of governmental functions. It merely assigns such as are of recognized character to the departments which are created by it for their convenient and effective exercise."

In *Hanna v. Mitchell,* 202 App. Div. 504, 196 N. Y. Supp. 43, the court said:

"The power to make rules governing the practice and procedure in the courts is a judicial and not a legislative power. This was clearly recognized when the Code of Procedure

was authorized to be adopted by the legislature. A change in the constitution was found necessary to confer the power upon the legislature. The federal constitution (art. III, secs. 1, 2) seems to give greater power to Congress over the proceedings in the federal courts than is given by the state constitution to the legislature, and yet the supreme court of the United States said: 'Congress might regulate the whole practice of the courts if it was deemed expedient so to do; but this power is vested in the courts; and it never has occurred to any one that it was a delegation of legislative power.' "

The territory comprising the state of Wisconsin was originally part of the Territories of Indiana, Illinois, Michigan, and Wisconsin. 1 Pin. 13. Michigan Territory, in 1805, by her governor and judges, adopted from the state of Massachusetts a law empowering her supreme court to make, record, and establish from time to time "all such rules and regulations, with respect to the admission of counsel and attorneys, and all other rules respecting modes of trial and the conduct of business, as the discretion of the court shall dictate." The act of Congress establishing the Territorial government of Wisconsin and taking effect July 4, 1836, provided that "the existing laws of the Territory of Michigan shall be extended over said Territory . . . subject nevertheless to be altered, modified, or repealed by the governor and legislative assembly of the said Territory of Wisconsin." At the first session of the legislature of the new Territory "An act concerning the supreme and district courts, and defining their jurisdiction and powers," was enacted December 8, 1836. It authorized the courts to establish rules and regulations respecting the trial and conduct of business, both in term and vacation. These powers were continued by the so-called Statutes of 1839, and remained in force until Wisconsin became a state, although as early as 1839 the legislature had enacted several laws regulating practice. Wisconsin appears to have operated under the Michigan rules until

1838, when the supreme court adopted four brief rules relating to its own procedure without affecting any inferior court. Two more were adopted in 1839; ten more in 1840, and one more in 1843.

Professor Morgan, in his article "Judicial Regulation of Court Procedure," 2 Minn. Law Rev. 1918, pp. 81–93, after reviewing the process by which the federal courts reached their conclusions, heretofore reviewed, states:

"It is therefore apparent that both in England and in our federal governmental system the regulation of procedure has not been regarded as an exclusively legislative function. And such has been its history in Minnesota also. In the Northwest Ordinance of 1787 and the act of August 17, 1789, to provide for the government of the Northwest Territory, there was no original separation of powers, for the governor and judges had legislative powers until the organization of a general assembly. In 1800 Indiana Territory was carved out of the Northwest Territory, and in 1805 Michigan Territory was carved out of Indiana Territory. In December, 1820, the governor and judges of Michigan Territory adopted an act concerning the supreme and county courts of the territory, sec. 12 of which gave the courts power to make 'all such rules respecting the trial and conduct of business both in term and vacation as the discretion of said court shall dictate,' and in order that the rules might be uniform the county courts were directed to make their rules conform as near as might be to the rules of the supreme court. In 1825 the general assembly enacted a more elaborate bill, sec. 18 of which made it the duty of the supreme court to prescribe rules and orders for the proper conducting of business in said court and in the circuit courts and for the regulating of the practice of said courts, 'so as shall be fit and necessary for the advancement of justice, and especially for preventing delay in proceedings.' A direction to the county courts similar to that contained in the former act was made for the sake of securing uniformity.

"This law was in force when, in 1836, Wisconsin Territory was established by an act which, among other things, continued the laws of Michigan Territory in force until

changed by the proper authorities. The policy of regulating the practice of the supreme and circuit courts by rules adopted by the supreme court was continued in the legislation of the state of Michigan. And in 1850 a similar provision was written into the constitution of Michigan.

"In 1836 the legislative assembly of Wisconsin Territory passed an act concerning the supreme and district courts which, in terms almost identical with those of the Michigan enactment of 1820, conferred upon the courts the power to make rules, and directed the district courts to conform their rules to those of the supreme court. When Wisconsin was admitted to the Union in 1848, this act was in force. . . .

"It will, consequently, be seen that in Minnesota and in the jurisdictions from which she inherited her laws, as well as in England and the federal government, the power to regulate procedure has been regarded not as an exclusively legislative power, nor yet as an exclusively judicial power, but certainly as a power properly within the judicial province when not otherwise directed by the legislature."

From the foregoing it is concluded that the power to regulate procedure, at the time of the adoption of the constitution, was considered to be essentially a judicial power, or at least not a strictly legislative power, and that there is no constitutional objection to the delegation of it to the courts by the legislature.

Another question is involved, and that is, whether the constitution does not vest the constitutional courts of this state, other than the supreme court, with the right to establish their own rules, and whether the act is not unconstitutional as an attempt to vest authority in the supreme court which the constitution has placed in the inferior courts. This question was treated in the case of *State ex rel. Foster-Wyman Lumber Co. v. Superior Court for King County,* heretofore cited. The court there relies upon the following comment by Dean Pound, with which we find ourselves in agreement:

"As to trial courts, the historical argument already made is decisive of the power of the reviewing court of general

jurisdiction to govern procedure by general rules, if not precluded by legislation. As the English judicial organization stood at the time our constitutions were adopted, trials were not had in the courts of Westminster, as a rule. Trials at bar in the superior courts were rare. Causes were heard at circuit before the King's justices or commissioners of assize and *nisi prius,* so that a justice of the King's Bench might try at circuit under a commission of assize and *nisi prius* a cause depending in the Common Pleas or *vice versa.* In other words, the trial courts were independent tribunals, quite as old as the superior courts. But the proceedings at circuit were reviewed on motion for new trial, motions in arrest, motions for judgment and the like in the superior courts in bank at Westminster. When our constitutions were adopted, practice for these cases was regulated by general rules of the superior courts at Westminster, some of which had been in force since the seventeenth century.

"It would seem, therefore, the supreme court of one of our states, which has always been looked upon as the historical equivalent of the court of King's Bench, might constitutionally be given the power to regulate the practice, in the causes it has the power to review in bank, as was the doctrine at common law as between the court at Westminster and the circuits.

"It should be noted that the statute of Colorado, enacted at the instance of the Bar Association of that state, proceeds upon this very theory.

"Moreover, this power of the highest court of general jurisdiction of the state, representing the King's Bench in the common-law judicial organization, to make general rules of practice which should govern also in the practice of inferior independent tribunals whose proceedings it had the power to review, was recognized in American legislation until the later tendency to govern every detail of procedure by statute caused the power for a time to become forgotten."

In *Seiler v. State,* 112 Wis. 293, 298, 87 N. W. 1072, this court said:

" 'The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue writs of *habeas corpus, mandamus,* injunction, *quo war-*

*ranto, certiorari,* and other original and remedial writs, and to hear and determine the same.'

"In that, as has been decided, there are three separate and distinct grants of jurisdiction: '(1) the appellate jurisdiction; (2) the superintending control over inferior courts; and (3) the original jurisdiction to be exercised by certain writs.' *Att'y Gen. v. Blossom,* 1 Wis. 317; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 591, 79 N. W. 1081. What the general nature of the limits of those distinct grants of power is, is a judicial question, and has been answered and the law in regard thereto firmly settled by the decisions of this court. Appellate jurisdiction extends only to the *revision of the decisions of inferior courts. State v. Brownell,* 80 Wis. 563, 50 N. W. 413; *Hubbell v. McCourt,* 44 Wis. 584. The power of superintending control is the power to 'control the course of ordinary litigation in inferior courts,' as exercised at common law by the court of King's Bench, and by the use of writs specifically mentioned in the constitution and other writs there referred to or authorized."

The further contention is made that there is a valid and well-understood distinction between rules of court which have for their purpose the regulation of matters of relatively minor importance—which merely govern the every-day routine of courts and enable them to act as such—and the more important rules of adjective law governing the trial of lawsuits and furnishing the machinery by which litigants may secure effective enforcement of their substantive rights. The contention is that all that has heretofore been said may properly be applicable to rules of the first class but that the whole field of the adjective law outside these rules falls within the scope of legislative powers and cannot be delegated. The cases do not sustain such a distinction. If there is any distinction between the two classes, and it is unnecessary to consider this here, it is that the powers essential to the functioning of courts, in the absence of the clearest language to the contrary in the constitution, are to be taken as committed solely to them as a necessary incident to their creation.

The final contention is that the act is unconstitutional because of the following provision (sec. 251.18, Stats.) :

"Nothing in this section shall abridge the right of the legislature to enact, modify or repeal statutes or rules relating to pleading, practice or procedure."

It is the contention that the legislature by this provision has at the same time delegated and retained the power to regulate rules of procedure, and that it is quite impossible that this power should exist simultaneously in the court and in the legislature. However, assuming the power of the legislature to enact rules of procedure and to delegate this power, it must follow, we think, that it can take back whatever it can give, and we have been unable to discover any rule that compels it either to give or to take back the whole rather than a part. The law is intended to free the courts from the obligation to follow precedent, which is assumed to have been a major factor in prior failures of courts successfully to regulate procedure, and, on the other hand, to relieve against the inflexibility and difficulty of repeal or modification, which has constituted the principal objection to regulation by legislative code. It is of course possible that a frequent exercise by the legislature of the power which it has reserved to repeal rules of courts would tend to impair the accomplishment of this purpose. On the other hand, it is fair to assume that the power will not be exercised except in those situations where, in the judgment of the legislature, the court has established a rule which is broader in scope than the necessities of procedural regulation call for. Since it is the purpose of this court meticulously to observe the letter and spirit of the grant of power contained in the section, we see no reason for concern over this provision of the section. At any rate the comment goes to the wisdom of the provision, and this is the sole concern of the legislature and has no weight or proper place in considering its constitutionality. In the field dealt with by this section there has been a demand for reform—a demand far too

insistent to indicate anything less than a corresponding need. The duty of governmental bodies to respond to such demands is self-evident. It is also self-evident that such response as is made must be in accordance with orderly processes and must be in conformance to constitutional limitations. The co-ordinate branches of the government, even in the face of such demands, should not abdicate or permit others to infringe upon such powers as are exclusively committed to them by the constitution. As to the exercise of those powers, however, which are not exclusively committed to them, there should be such generous co-operation as will tend to keep the law responsive to the needs of society. This co-operation is peculiarly necessary today because the complexities of modern life and its problems make it increasingly difficult accurately to predict the value and effect of particular procedures, and increasingly necessary to move by a method of trial and error.

It being the conclusion of the court that the statute is constitutional, the court will in due time enter such an order as is necessary and appropriate to carry out the statutory purpose and to dispose of the recommendations of the advisory committee. [See *ante,* p. iv.]

*By the Court.*—Sec. 251.18, Stats., is held to be constitutional and valid, and the court, at an early date, will enter an order disposing of the recommendations of the advisory committee.