STATE of Wisconsin, Plaintiff-Respondent,

v.

Lazaro BORRELL, Defendant-Appellant.†
[Case No. 90-2241-CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles L. SMITH, Defendant-Appellant. [Case No. 90-2332-CR.]

Supreme Court

*Nos. 90–2241–CR, 90–2332–CR. Oral argument January 3, 1992.—Decided April 27, 1992.*

(Also reported in 482 N.W.2d 883.)

†Motion for reconsideration denied on June 23, 1992.

751

753

755

For the defendant-appellant, Lazaro Borrell, there were briefs by *Robert R. Henak, Dean A. Strang* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee and oral argument by *Mr. Henak.*

For the defendant-appellant, Charles L. Smith, there was a brief and oral argument by *Donna L. Hintze,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

CALLOW, WILLIAM G., J. This case involves the constitutionality of sec. 973.014, Stats. 1987–88,[1] as it affects the parole eligibility date of persons sentenced to life imprisonment. In separate cases, the circuit court denied the defendants' post-conviction motions for resentencing and held that sec. 973.014 was constitutional. The defendants appealed the decisions of the circuit court. The court of appeals (District I) consolidated the two cases and certified them to us. We accepted the certification pursuant to sec. (Rule) 809.61, Stats.

On this appeal, the constitutionality of sec. 973.014, Stats., is challenged on five separate grounds: namely, that it violates the separation of powers doctrine, due process protections, effective assistance of counsel assurances, prohibitions against cruel and unusual punishment, and the right to a meaningful appeal. We hold that sec. 973.014 is constitutional in all respects. The defendants also raise additional issues that are specific to each of their particular cases.

The relevant facts are not in dispute. On September 19, 1988, Lazaro Borrell was charged with first-degree murder, party to a crime, in violation of secs. 939.05 and

---

[1]Section 973.014, Stats. 1987–88, states:

**973.014 Sentence of life imprisonment; parole eligibility determination.** When a court sentences a person to life imprisonment for a crime committed on or after July 1, 1988, the court shall make a parole eligibility determination regarding the person and choose one of the following options:

 **(1)** The person is eligible for parole under s. 57.06(1).

 **(2)** The person is eligible for parole on a date set by the court. Under this subsection, the court may set any later date than that provided in s. 57.06(1), but may not set a date that occurs before the earliest possible parole eligibility date as calculated under s. 57.06(1).

Section 57.06 was subsequently renumbered as sec. 304.06 and sec. 973.014 was amended to reflect that change. *See* 1989 Act 31, secs. 1699, 2861, and 2862.

940.01, Stats. 1985-86,[2] and armed robbery, party to a crime, in violation of secs. 939.05, and 943.32(1)(a), Stats. 1985-86.[3] The charges resulted from an armed robbery at Salva's Boutique, a Milwaukee jewelry store, on September 8, 1988. During the course of the armed robbery, a jewelry salesman began struggling with one of Borrell's companions. Borrell fired a warning shot into the ceiling. When the two continued to struggle, Borrell walked within three feet of the salesman and fatally shot him in the back with a sawed-off shotgun.

A jury found Borrell guilty of both the first-degree murder and the armed robbery. Circuit Judge Laurence Gram, Jr., sentenced Borrell to life imprisonment with no parole eligibility until January 1, 2025, for the first-degree murder conviction. He also sentenced Borrell to a consecutive twenty-year prison term for the armed robbery conviction. Judge Gram explained that Borrell's sentence and parole eligibility date was based on the brutality of the crime, the failure of the defendant to show remorse, and, most importantly, the need to protect the community. Borrell moved for post-conviction relief on the basis that sec. 973.014, Stats., which allows the circuit court to set a parole eligibility date, was

[2]Section 940.01, Stats. 1985-86, states:

**940.01 First-degree murder. (1)** Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

**(2)** In this chapter "intent to kill" means the mental purpose to take the life of another human being.

[3]Section 943.32(1)(a), Stats. 1985-86, states:

**943.32 Robbery. (1)** Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:

**(a)** By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property.

unconstitutional. Judge Gram denied Borrell's post-conviction motion and held that sec. 973.014 was constitutional.

On March 13, 1989, Charles Smith was charged with first-degree intentional homicide in violation of sec. 940.01, Stats. 1989–90.[4] The charge was the result of an incident where Smith entered the photo studio at a Sears store and fatally shot his wife, Vicki Smith, in the head five times at very close range. Evidence was presented at the trial that Smith was under the influence of the drug mescaline at the time he shot his wife. Dr. Edward Rubin, a licensed psychologist, testified as to the effects of mescaline. However, Circuit Judge Michael Skwierawski would not permit Dr. Rubin to give an opinion on whether Smith, in fact, formed the requisite intent to kill his wife, believing that such determination was best left to the jury.

A jury convicted Smith of first-degree intentional homicide. Judge Skwierawski imposed a mandatory life sentence and ordered Smith eligible for parole after sixteen years imprisonment. Judge Skwierawski explained that Smith's sentence and parole eligibility date were based on four factors: the gravity of the offense, Smith's apparent mental illness, Smith's age, and the need to protect the community. Smith moved for post-conviction relief on the basis that sec. 973.014, Stats., was unconstitutional. Judge Skwierawski denied Smith's post-conviction motion and held that sec. 973.014 was constitutional.

---

[4]Section 940.01, Stats. 1989–90, states:

**940.01 First-degree intentional homicide. (1) OFFENSE.** Except as provided in sub. (2), whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

Both Borrell and Smith appealed the decisions of the circuit court. Their cases were consolidated by the court of appeals and certified to this court. We accepted the certification and now affirm the decisions of the circuit court.

## I.

The defendants in this case challenge the constitutionality of sec. 973.014, Stats., on several grounds: namely, that it violates the separation of powers doctrine, due process protections, effective assistance of counsel assurances, prohibitions against cruel and unusual punishment, and the right to a meaningful appeal.

The constitutionality of a statute is a question of law which we review independent of the decisions by the lower courts. *State v. Holmes,* 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982). A statute is presumed to be constitutional. *State v. Unnamed Defendant,* 150 Wis. 2d 352, 364–65, 441 N.W.2d 696 (1989). The burden of establishing the unconstitutionality of a statute is on the person attacking it, who must overcome the strong presumption in favor of its validity. *Id.* In this case, the defendants shoulder the burden of establishing that sec. 973.014, Stats., is unconstitutional. We shall address each issue presented by the defendants separately.

## A.

First, the defendants argue that sec. 973.014, Stats., shifts the legislative power of making public policy to the judiciary in violation of the separation of powers doctrine. They contend that establishing a parole eligibility date is a public policy determination which involves the consideration of community standards. The defendants

conclude, therefore, that the failure of the legislature to include any standards in sec. 973.014 constitutes an impermissible delegation of determining public policy to the judiciary.

■

The separation of powers doctrine is not expressly set forth in the Wisconsin Constitution but rather is embodied in the provisions that vest legislative, executive and judicial powers in three separate branches of government. *Unnamed Defendant,* 150 Wis. 2d at 360. The legislative power is vested in the senate and the assembly by virtue of art. IV, sec. 1 of the Wisconsin Constitution. The executive power is vested in the governor and lieutenant governor by virtue of art. V, sec. 1. The judicial power is vested in the courts by virtue of art. VII, sec. 2.

Recently, in *Unnamed Defendant,* this court cogently explained the operation and purpose of this doctrine:

> Separation of powers prevents one branch of government from exercising the powers granted to other branches. *Davis v. Village of Menasha,* 21 Wis. 497 (1867); *Thoe v. Chicago M.&S.P.R. Co.,* 181 Wis. 456, 195 N.W. 407 (1923). Not all governmental powers, however, are exclusively committed to one branch of government by the Wisconsin Constitution. *Rules of Court Case,* 204 Wis. 501, 514, 236 N.W. 717 (1931). Those powers which are not exclusively committed may be exercised by other branches. *Id.* In areas of shared power, however, one branch of government may exercise power conferred on another only to an extent that does not unduly burden or substantially interfere with the other branch's essential role and powers. *State v. Holmes,* 106 Wis. 2d 31, 44, 315 N.W.2d 703 (1982). The doctrine serves to maintain the balance between the

763

three branches, preserve their independence and integrity, and to prevent the concentration of unchecked power in the hands of one branch. *Washington,* 83 Wis. 2d at 826.

*Unnamed Defendant,* 150 Wis. 2d at 360-61. Our inquiry requires us to apply these principles to the parole eligibility date determination under sec. 973.014, Stats.

A person convicted of a crime has no legal or constitutional right or entitlement to parole. Any rights that a convicted defendant has with respect to parole are only those rights created by the legislature as a matter of grace or favor. *State ex rel. Johnson v. Cady,* 50 Wis. 2d 540, 545, 185 N.W.2d 306 (1971); *Tyler v. State Dep't of Public Welfare,* 19 Wis. 2d 166, 175, 119 N.W.2d 460 (1963). Any such right exists only to the extent that the legislature provides. The legislature not only can specify when a person convicted of a particular crime may be eligible for parole but can also disallow or abolish the right to parole for any or all crimes.

The parole eligibility date determination is dependent upon the length of the sentence imposed by the sentencing court. The sentence imposed in each case should recognize the minimum amount of custody or confinement that is consistent with the need to protect the public, the gravity of the offense and the rehabilitative needs of the convicted defendant. *McCleary v. State,* 49 Wis. 2d 263, 276, 182 N.W.2d 512 (1971). Under Wisconsin's system of indeterminate sentencing, the convicted defendant is generally eligible for parole release after serving 25 percent of his or her sentence. Section 304.06(1)(b), Stats. This arrangement causes the particular sentence imposed to be determinative of the defendant's parole eligibility date. In situations where, as

here, the defendant is convicted of more than one offense, the sentencing court possesses the ability to impose upon the defendant consecutive rather than concurrent sentences. Where consecutive sentences are imposed, the defendant would not be eligible for parole until he or she had served the minimum amount of time required under both sentences.[5] Thus, the sentencing court is required to exercise discretion to fashion a sentence, within the range provided by the legislature, which reflects the circumstances of the case and the characteristics of that particular defendant. However, the legislature has determined that some criminal offenses, such as first-degree murder, are so egregious that they should carry a sentence of life imprisonment and the defendant convicted of such an offense should be confined away from society for a mandatory minimum period of time.

Section 973.014(1), Stats., specifies the absolute minimum period of time that a person convicted of a crime and sentenced to life imprisonment must actually be confined in prison before becoming eligible for parole release: approximately thirteen years and four months.[6]

[5]In the instant case, Borrell was sentenced to life imprisonment with parole eligibility on January 1, 2025 for first-degree murder and a consecutive twenty-year prison term for armed robbery. Because of the consecutive sentences, Borrell is not actually eligible for parole on January 1, 2025. He must serve an additional five years in connection with the armed robbery conviction prior to being eligible for parole release. *See* sec. 304.06(1)(b), Stats. However, this review is limited to the parole eligibility date determination under sec. 973.014, Stats., relating to the first-degree murder conviction.

[6]Two options are available for a sentencing court when determining the parole eligibility date of a person sentenced to life

However, the legislature has also recognized the continued importance of judicial discretion in this area. In

imprisonment. First, under sec. 973.014(1), Stats., the court may defer to the statutory parole eligibility date. Second, under sec. 973.014(2), the court may establish a later parole eligibility date that is more consistent with the circumstances of the case and the characteristics of that particular defendant. The statutory parole eligibility date for the life inmate is a complicated computation and, thus, is reproduced below.

The mandatory release provisions under sec. 53.11, Stats. 1987–88 (renumbered as sec. 302.11, Stats.), basically provide a "good time credit" for persons serving prison sentences and specify when each inmate must be released on parole. The pertinent portions of these provisions are as follows:

> **53.11 Mandatory release. (1)** . . .. Except as provided in subs. (1m), (7) and (10), each inmate is entitled to mandatory release on parole by the [parole commission]. The mandatory release date is established at two-thirds of the sentence . . ..
>
> **(1m)** An inmate serving a life term is not entitled to mandatory release. Except as provided in s. 973.014, the [parole commission] may parole the inmate as specified in s. 57.06(1). . . .
>
> **(2)** (a) Any inmate who violates any regulation of the prison or refuses or neglects to perform required or assigned duties is subject to extension of the mandatory release date as follows: 10 days for the first offense, 20 days for the 2nd offense and 40 days for the 3rd or each subsequent offense.

The statute specifically states that a person sentenced to life imprisonment is not *entitled* to a mandatory release date. However, the life inmate may be *eligible* for parole release as specified in sec. 57.06(1), Stats. 1987–88.

Section 57.06(1)(b), Stats. 1987–88 (renumbered as sec. 304.06(1)(b), Stats.), states that, "except as [established by the court under sec. 973.014, Stats.,] the [parole commission] may parole an inmate serving a life term when he or she has served 20 years, as modified by the formula under s. 53.11(1) and subject to extension using the formulas under s. 53.11(2)." While a life inmate is not entitled to a mandatory release date, the mandatory release formula is utilized by sec. 57.06(1)(b) to compute the

some instances, the absolute minimum parole eligibility date may be inadequate for a convicted defendant sentenced to life imprisonment. For example, repeated criminal behavior or a particularly gruesome criminal offense may warrant a parole eligibility date later than the absolute minimum. Realizing that the sentencing court is in a better position to assess the particular circumstances of each case and each convicted defendant, the legislature permits the sentencing court, under sec. 973.014(2), to use its discretion to set a parole eligibility date later than the absolute minimum where the circumstances warrant. The parole eligibility date determination is, thus, an essential and integral part of the court's sentencing decision.[7]

It is well established that Wisconsin's system of sentencing is an area of shared responsibility among the separate branches of government: "[i]t is the function of the legislature to prescribe the penalty and the manner of its enforcement; the function of the courts to impose the penalty; while it is the function of the executive to grant paroles and pardons." *Drewniak v. State ex rel. Jacquest,* 239 Wis. 475, 488, 1 N.W.2d 899 (1942).[8] The

statutory parole eligibility date for a life inmate. The statutory parole eligibility date for a life inmate can be computed by multiplying the 20 years under sec. 57.06(1)(b) by two-thirds under sec. 53.11(1), Stats. 1987-88. Therefore, the absolute minimum period of time that a person convicted of a crime and sentenced to life imprisonment must actually be confined in prison before becoming eligible for parole release is approximately thirteen years and four months.

[7]*See also Warden v. Marrero,* 417 U.S. 653, 658 (1974).

[8]In *Mistretta v. United States,* 488 U.S. 361 (1989), the United States Supreme Court acknowledged shared responsibility for sentencing at the federal level as well:

relevant question then is whether allowing the sentencing court to determine the parole eligibility date for a convicted defendant sentenced to life imprisonment unduly burdens or substantially interferes with the essential roles and powers of either of the other branches of government.

We conclude that judicial discretion in the parole eligibility date determination does not unduly burden or substantially interfere with the essential role and power of the legislative branch. "It is within the legislative power to give the courts discretionary powers, when certain conditions have been judicially determined to exist, or to direct the court's action in the premises without discretion." *In re Adoption of Morrison,* 267 Wis. 625, 633, 66 N.W.2d 732 (1954). The legislature has made the public policy determination that sentencing courts should use discretion in fashioning a sentence that is based on the nature of the criminal offense, the public's need for protection and the rehabilitative needs of the

Historically, federal sentencing—the function of determining the scope and extent of punishment—never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government. Congress, of course, has the power to fix the sentence for a federal crime, . . . and the scope of judicial discretion with respect to a sentence is subject to congressional control. . . . Congress delegated almost unfettered discretion to the sentencing judge to determine what the sentence should be within the customarily wide range so selected.

*Mistretta,* 488 U.S. at 364 (citations omitted). The creation of federal sentencing guidelines which established a range of determinate sentences for categories of offenses severely limited the scope of judicial sentencing discretion at the federal level. *Id.* at 367–68. Wisconsin's system of indeterminate sentencing is more consistent with the system of sentencing at the federal level prior to the creation of the federal sentencing guidelines.

convicted defendant. The legislature continues to retain the power and authority to determine the scope of the sentencing court's discretion. *In re Felony Sentencing Guidelines,* 120 Wis. 2d 198, 203, 353 N.W.2d 793 (Per Curiam 1984). In 1983, for example, the legislature expressed a desire for consistency in criminal sentencing and authorized this court to promulgate rules for sentencing guidelines to be used in Wisconsin. *See* 1983 Wis. Act 371. This court declined to promulgate the sentencing guidelines, believing it would represent an unwarranted intrusion on the discretion of sentencing judges as afforded by the legislature. *Felony Sentencing Guidelines,* 120 Wis. 2d at 204. Thereafter, the legislature established an independent sentencing commission as part of the state department of administration to promulgate such guidelines.

The State correctly points out that Wisconsin adopted the common law as it existed at the time of the state constitution in which judges possessed the inherent and discretionary power to punish violations of law in the absence of a statute prescribing the punishment.[9] Article XIV, sec. 13 of the Wisconsin Constitution states, "such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature." Common-law crimes and common-law penalties were not abolished by the legislature until 1955. Sections 939.10 and 939.61, Stats. 1955. Because the authority to prescribe penalties for crimes was not exclusively a legislative power at the time of the adoption of the constitution, a statute which now delegates some of that power back to the judiciary cannot be considered an unconsti-

---

[9]Note, *Judicial Power to Find Common Law Crimes in Wisconsin,* 1939 Wis. L. Rev. 300, 302–03.

tutional delegation of legislative power to the judiciary. *Rules of Court Case,* 204 Wis. 501, 513, 236 N.W. 717 (1931).

Furthermore, the court's authority under sec. 973.014, Stats., to determine the parole eligibility date of a person convicted and sentenced to life imprisonment does not encroach upon or unduly burden the executive branch's authority to grant pardons, commute sentences, or grant parole. First, the parole eligibility date determination in no way prevents the governor from granting a pardon for or commuting the sentence of a person convicted of a crime. Second, parole is a creature of the legislature. The legislature has determined that public policy requires a person convicted of a crime that carries a life sentence to serve a certain minimum number of years before being eligible for parole release. The Parole Board's authority to grant parole release is not initiated until the prisoner reaches his or her parole eligibility date. Section 973.014 merely permits the sentencing court to set the *parole eligibility date.* The court has been given no power over the actual *parole release* decision. Therefore, the Parole Board's authority to grant parole release is unhindered by sec. 973.014.

We conclude that sec. 973.014, Stats., does not impermissibly delegate legislative public policy making functions to the judiciary nor does it unduly burden the executive's authority to grant pardons, commute sentences, or grant parole release. Therefore, sec. 973.014 does not violate the separation of powers doctrine.

## B.

Second, the defendants argue that sec. 973.014, Stats., deprives them of their liberty interest in the parole eligibility date determination because the statute provides no standards for the courts to follow in setting the parole eligibility date. They contend that the due process clause requires precise standards and criteria for the exercise of the court's power under sec. 973.014.

We find no authority for the defendants' argument that due process requires established and precise standards for imposition of a particular sentence. To the contrary, in *Maynard v. Cartwright*, 486 U.S. 356 (1988), the United States Supreme Court explained that a vagueness challenge to a sentencing statute or sentencing factors was a cruel and unusual punishment claim under the Eighth Amendment rather than a due process claim. *Maynard*, 486 U.S. at 361. *Maynard* involved the imposition of the death penalty under an Oklahoma statute. The defendant in *Maynard* made a due process argument similar to the one made here by Borrell and Smith. The *Maynard* court rejected the defendant's due process argument, but proceeded to analyze the case under the standards developed for the Eighth Amendment. Borrell's cruel and unusual punishment claim is analyzed later in this opinion. In the interests of thoroughness, we shall briefly address the defendants' due process rights with respect to the parole eligibility date determination.

As previously stated, a person convicted of a crime has no right to parole. Simply because the state legislature has provided the possibility of parole creates "no more than a mere hope that the benefit will be obtained." *Greenholtz v. Nebraska Penal Inmates*, 442

771

U.S. 1, 11 (1979). The possibility of parole does not create a claim of entitlement nor a liberty interest. Therefore, a prisoner's hope for discretionary parole warrants minimal protection under the due process clause. *State ex rel. Tyznik v. Health & Social Services Dep't,* 71 Wis. 2d 169, 173, 238 N.W.2d 66 (1976). Because the parole eligibility date determination is an integral part of sentencing, we believe that a defendant's due process rights relating to the parole eligibility date determination are no greater than those associated with sentencing.

A defendant has three due process rights at sentencing: (1) to be present at the hearing and to be afforded the right to allocution, (2) to be represented by counsel, and (3) to be sentenced on the basis of true and correct information. *Bruneau v. State,* 77 Wis. 2d 166, 174–75, 252 N.W.2d 347 (1977). In Wisconsin, the third right that requires a judge to sentence only on the basis of true and correct information incorporates the requirement enumerated in *McCleary* that the judge must articulate the basis for the sentence imposed on the facts of the record. *Id.* at 175 and n. 4.

A review of the records in the present cases shows that both Borrell and Smith were afforded each of these rights. The defendants were present at their sentencing hearings and were represented by counsel.[10] Each was

[10]Even though his previous conduct tended to prove that he had a good grasp of the English language, Borrell was provided an interpreter in case he did not understand something that was said at trial or at the sentencing hearing. He denied understanding any English. However, the record reflects that in his numerous conversations with police, he always spoke in English. Furthermore, Judge Gram noted on the record at the sentencing hearing that,

afforded an opportunity to be heard. Prior to imposing sentence, the judges considered the evidence, the statements of the parties, and the presentence investigation reports. Both Judge Gram and Judge Skwierawski clearly delineated and explained their reasons for the sentences imposed and the parole eligibility dates set. We conclude, therefore, that no violation of due process occurred with respect to the rights of Borrell and Smith. Sufficient protection against erroneous and arbitrary decision-making exists because the parole eligibility date determination, similar to the imposition of a particular sentence, is reviewable for abuse of discretion.

## C.

Third, the defendants argue that sec. 973.014, Stats., denies them the effective assistance of counsel at the sentencing hearing. They contend that the omission of standards upon which the court determines the parole eligibility date renders even a competent lawyer ineffective because the lawyer can only guess which factors the court will consider in making the determination. The defendants' argument is without merit.

The factors that a sentencing court considers are well-established in Wisconsin law. The primary factors that a sentencing court considers are (1) the gravity of the offense, (2) the character of the offender, and (3) the need to protect the public. *State v. Sarabia,* 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984). As part of these primary factors, the sentencing court may consider: the

"the court was present and observed on occasion outside the presence of the jury the defendant actually corrected the interpreter . . . .. He's really not truthful when he denies understanding any English at all."

773

vicious or aggravated nature of the crime; the past record of criminal offenses; any history of undesirable behavior patterns; the defendant's personality, character and social traits; the results of a presentence investigation; the degree of the defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance and cooperativeness; the defendant's need for rehabilitative control; the right of the public; and the length of pretrial detention. *State v. Harris,* 119 Wis. 2d 612, 623, 350 N.W.2d 633 (1984).

These factors constitute nothing more than that which a court would consider when imposing a sentence on a convicted defendant. These are the same factors that influence the parole eligibility date determination. A competent lawyer should be able to recognize and argue those factors that may influence the sentencing court's decision in a particular case. The legislature's failure to include standards in sec. 973.014, Stats., merely reflects a recognition that these factors are already well-established and that the sentencing court is in the best position to recognize and apply those factors that are relevant to the case. Therefore, sec. 973.014 does not deny the defendant the effective assistance of counsel at the sentencing hearing.

## D.

Fourth, Borrell argues that sec. 973.014, Stats., amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution because the statute lacks standards to guide the sentencing court in its parole eligibility date determination. Borrell contends that sec. 973.014, which permits a

court to impose a sentence of life imprisonment without eligibility for parole for a defendant convicted of first-degree murder, encourages and promotes cruel and unusual punishment in the same way as the arbitrary imposition of the death penalty. However, this is not the appropriate inquiry under the Eighth Amendment. With respect to the present case, the appropriate inquiry under the Eighth Amendment is whether the lack of standards or the impreciseness of the standards causes the penalty *imposed* upon the defendant to be cruel and unusual punishment. The fact that a particular sentencing statute includes the possibility that cruel and unusual punishment may be imposed is irrelevant if that statute is never actually used to impose cruel and unusual punishment.

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The United States Supreme Court has declared that the Eighth Amendment prohibits not only barbaric punishments, but also sentences that are grossly disproportionate to the severity of the crime. *Rummel v. Estelle,* 445 U.S. 263, 271 (1980); *Solem v. Helm,* 463 U.S. 277, 284 (1983). The proportionality analysis has appeared most frequently in opinions dealing with the death penalty. *See Maynard v. Cartwright,* 486 U.S. 356 (1988); *Enmund v. Florida,* 458 U.S. 782 (1982); *Godfrey v. Georgia,* 446 U.S. 420 (1980); and *Coker v. Georgia,* 433 U.S. 584 (1977). The *Rummel* Court recognized that because "a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to [a person not sentenced to death]." *Rummel,* 445

U.S. at 272. Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare. *Id.* For sentences of imprisonment, the proportionality analysis is merely an exercise in line-drawing.

In *Solem,* the Supreme Court identified three objective criteria for courts to consider when undertaking a proportionality analysis. When a particular sentence imposed is scrutinized under the Eighth Amendment the court should assess the following objective criteria: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions. *Solem,* 463 U.S. at 290–92. However, a recent decision by the Supreme Court casts serious doubt on the viability of the proportionality analysis for non-death penalty cases.

In *Harmelin v. Michigan,* 111 S. Ct. 2680 (1991), the Court held that the imposition of a mandatory sentence of life imprisonment without the possibility of parole, without any consideration of mitigating factors, for a defendant convicted of possessing more than 650 grams of cocaine did not constitute cruel and unusual punishment. *Harmelin,* 111 S. Ct. at 2701. Writing for the Court and joined by Chief Justice Rehnquist, Justice Scalia rejected the use of the proportionality analysis outside the death penalty context and stated that *Solem* should be overruled in this respect. *Id.* at 2684–86. However, in a concurring opinion, joined by Justices O'Connor and Souter, Justice Kennedy stated that even outside the death penalty context a narrow proportionality principle has existed in Eighth Amendment jurisprudence for eighty years. *Harmelin,* 111 S. Ct. at 2702 (Kennedy, J., concurring in part). The dissenting jus-

tices, of course, also disagree with Justice Scalia. Affording Borrell the benefit of the doubt, we shall apply the proportionality analysis to this case (a non-death penalty case).

In his concurring opinion in *Harmelin,* Justice Kennedy explained:

> This Court's decisions indicate that such an analysis is appropriate in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality . . ., but not in the usual case where no such inference arises.

*Id.* at 2708 (Kennedy, J., concurring) (citations omitted). The concurring justices in *Harmelin* therefore concluded that, given the severity of Harmelin's conduct (i.e., possession of cocaine), the Court need not apply the proportionality analysis to the life sentence without parole imposed upon him because no inference of gross disproportionality arises. *Id.* Surely if the imposition of life imprisonment without the possibility of parole for possession of cocaine does not give rise to the inference of gross disproportionality, then, as here, the imposition of life imprisonment with parole eligibility after approximately 35 years for first-degree murder does not give rise to the inference of gross disproportionality. Therefore, we conclude that the sentence imposed upon Borrell and the parole eligibility date established pursuant to sec. 973.014, Stats., was not cruel and unusual punishment under the Eighth Amendment. First-degree murder is the most serious of all crimes and well deserving of the most severe punishment allowed in Wisconsin, life imprisonment.

777

## E.

Fifth, Smith argues that sec. 973.014, Stats., deprives a convicted defendant a meaningful appeal. Once the right to appeal is granted, a defendant is protected by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and, thus, the right to appeal cannot be rendered meaningless. *Griffin v. Illinois,* 351 U.S. 12, 18 (1956). Smith contends that the lack of standards in sec. 973.014 makes it impossible for a reviewing court to measure the sentencing court's exercise of discretion and, thus, renders appellate review meaningless. We disagree.

Parole eligibility date determinations are reviewable for abuse of discretion the same as other sentencing decisions. *See Sarabia,* 118 Wis. 2d at 673, and *McCleary,* 49 Wis. 2d at 273. We have already explained the factors that are relevant at sentencing. The application of these factors and the requirement that a sentencing court state the factors underlying the sentencing decision ensure a meaningful review on appeal.

The statute does not violate the separation of powers doctrine, due process protections, effective assistance of counsel provisions, protections against cruel and unusual punishment, or rights to a meaningful appeal. Therefore, sec. 973.014, Stats., is constitutional in all respects before this court.

## II.

Each of the defendants raise additional issues in connection with their own individual cases. We shall address each of these issues separately.

Borrell additionally argues that the circuit court's failure to instruct the jury on the lesser-included offense of second-degree murder was reversible error. He asserts that reasonable grounds existed in the evidence for an acquittal on the first-degree murder charge and conviction on second-degree murder charge. The State argues that there was no reasonable basis for the jury to acquit Borrell of first-degree murder and convict him of the lesser offense.

While we generally afford the circuit court broad discretion with respect to the submission of jury instructions, the issue of whether the evidence presented at trial permits the giving of a lesser-included offense instruction to the jury is a question of law. *State v. Wilson,* 149 Wis. 2d 878, 898, 440 N.W.2d 534 (1989). This court decides questions of law independently, without deference to the trial court or the court of appeals. *Id.*

The submission of a lesser-included offense instruction is proper *only* when there exists reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense. *Id.* Borrell was charged and convicted of first-degree murder under sec. 940.01, Stats. 1985–86. The differentiating factor between first-degree murder and second-degree murder under sec. 940.02, Stats. 1985–86,[11] is intent to kill.

---

[11] Section 940.02, Stats. 1985–86, provides:

**940.02 Second-degree murder.** Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:

(1) By conduct imminently dangerous to another and evincing a depraved mind, regardless of human life; or

(2) As a natural and probable consequence of the commission of or attempt to commit a felony.

*Johnson v. State,* 85 Wis. 2d 22, 32, 270 N.W.2d 153 (1978).

Borrell contends that the instruction for second-degree murder should have been provided because a reasonable view of the evidence would allow the jury to conclude that Borrell did not intend to kill the jewelry salesman. We disagree.

As an initial matter, we must discard the defendant's wholly exculpatory testimony that he was neither present nor involved in the criminal activity. Borrell's exculpatory testimony sheds no light on our lesser-included analysis. He did not testify that he shot the victim unintentionally or accidently or with the intention of merely scaring the victim. Rather, Borrell testified that he was not involved in the criminal activity at all. Borrell's exculpatory testimony does not support the lesser offense of second-degree murder and, thus, we shall disregard that testimony. We must review the remaining evidence to determine whether a different but reasonable view of the record supports acquittal on the greater charge and conviction on the lesser offense. *Wilson,* 149 Wis. 2d at 901.

The record indicates that during the course of an armed robbery of a jewelry store, one of Borrell's companion robbers began struggling with the jewelry salesman. Borrell fired a warning shot into the air, but the struggle continued. Therefore, Borrell walked within three feet of the jewelry salesman and fatally shot him in the back. The evidence substantially and readily supports a finding of intent to kill. *See also Fells v. State,* 65 Wis. 2d 525, 534–35, 223 N.W.2d 507 (1974). Borrell seeks to rely on testimony of Annie Gonzalez, an acquaintance of the defendant, that after the crime Borrell was crying and saying, "he didn't want to kill the

guy." However, these statements indicate nothing about Borrell's state of mind at the time of the incident. First, an after-the-fact exclamation that events did not unravel as one would have liked or wanted them to have occurred is irrelevant to the person's state of mind at the time the events are transpiring. Second, what one wants and what one intends are not always the same. For example, one may not want to pay her taxes, even though she intends to pay them. Want evinces desire; intent is a reflection of purpose. Thus, the record does not support reasonable grounds for acquittal of first-degree murder. Therefore, the circuit court did not err in refusing to instruct on the lesser-included offense of second-degree murder.

Borrell also argues that the circuit court abused its discretion by extending his parole eligibility date under sec. 973.014. He contends that the circuit court improperly applied two factors in reaching its parole eligibility decision: (1) the perceived danger to the community, and (2) the brutal and "cold-blooded" nature of the murder. Borrell maintains that the circuit court did not find that he was a danger to the community until the year 2025, but only that he continued to be a danger at the time of sentencing. Further, he maintains that every intentional murder could be characterized as brutal and "cold-blooded." Therefore, Borrell suggests that the factors relied on by the circuit court fail to justify an extended parole eligibility date.

As explained earlier, the parole eligibility date determination is an integral part of the sentencing decision. Sentencing is a discretionary judicial act and appellate review is limited to determining whether there was an abuse of discretion. *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633 (1984). The sentencing decisions of the circuit court are generally afforded a strong presumption

of reasonability because the circuit court is best suited to consider the relevant factors and demeanor of the convicted defendant. *Id.* Therefore, the convicted defendant must show some unreasonable or unjustified basis in the record for the sentence imposed. *Id.* at 622–23.

The trial judge is required to articulate the basis for the sentence imposed on the facts of record. *Id.* at 623. The basis must have "a logical rationale founded upon proper legal standards." *McCleary,* 49 Wis. 2d at 277.

In Borrell's case, Judge Gram articulated three factors upon which he sentenced Borrell and extended his parole eligibility date. First, Judge Gram indicated that the court found no explanation for this brutal, cold-blooded killing of the jewelry salesman during the armed robbery. Second, Judge Gram considered Borrell's failure to show remorse for his actions. Third, and finally, Judge Gram determined that the need to protect the community was paramount in establishing Borrell's parole eligibility date. The factors considered by the circuit court were relevant and appropriate under *Sarabia* and *Harris.* Therefore, the circuit court did not abuse its discretion in deciding to extend Borrell's parole eligibility date.

Smith additionally argues that he was denied his constitutional right to present a meaningful voluntary intoxication defense when the circuit court precluded expert opinion testimony that due to Smith's intoxicated state at the time of the incident, he was unable to form an intent to kill. The State argues, in response, that the expert was merely offering to give his personal opinion that Smith did not intend to kill his victim. The State contends that this is not the type of expert testimony that is admissible.

Under Wisconsin law, psychiatric opinion testimony on the issue of a defendant's capacity to form the requisite criminal intent is prohibited if the opinion is based on the defendant's mental health history. *State v. Flattum*, 122 Wis. 2d 282, 292-93, 361 N.W.2d 705 (1985). However, a psychiatrist, who is properly qualified as an expert on the effects of intoxication, may give his or her expert opinion on the issue of a defendant's capacity to form the requisite intent to kill if that opinion is based solely on the defendant's voluntary intoxicated condition. *Id.* at 293.

The expert opinion testimony elicited by the defense from Dr. Edward Rubin, a licensed psychologist, in the offer of proof was as follows:

Q. [Defendant's Attorney]: Now doctor, based upon your information about [the defendant] Charles Smith in the past with regard to his ingestion of mescaline and his physical characteristics, his psychological state of mind on the particular date in question, do you have an opinion based upon a reasonable degree of psychological certainty as to whether Charles Smith could have formed the specific intent to kill Vicki Smith?

A. [Dr. Rubin]: I do.

Q. And what is that opinion?

A. My belief is that it was not his intent to kill Vicki Smith on that day.

Summarily, Dr. Rubin was prepared to testify that Smith could have formed the intent to kill, but he did not believe that Smith actually did form that intent. Judge Skwierawski would not admit into evidence this portion of Dr. Rubin's expert testimony.

The offer of proof indicates that Dr. Rubin was not testifying that Smith's mescaline intoxication rendered him incapable of forming the requisite intent to kill. Instead, Dr. Rubin would have testified that Smith was capable of forming the requisite intent, but that it was Dr. Rubin's own personal opinion that Smith did not, in fact, form that intent. This is not the type of expert opinion testimony permitted by *Flattum. See also Steele v. State,* 97 Wis. 2d 72, 98, 294 N.W.2d 2 (1980), and *State v. Dalton,* 98 Wis. 2d 725, 731, 298 N.W.2d 398 (Ct. App. 1980). Therefore, the portion of Dr. Rubin's expert opinion testimony that the defendant did not have specific intent to kill at the time of the homicide was properly excluded because he was offering a lay opinion on the ultimate fact to be determined by the jury rather than an expert opinion that was based on scientific knowledge.

Dr. Rubin was permitted to testify before the jury concerning the possible effects of mescaline on a person who takes the drug and capabilities of a person under the influence of mescaline. However, the jury is the finder of fact. It was for the jury to decide, uninfluenced by an opinion not based on scientific knowledge, whether Smith in fact formed the requisite intent to kill Vicki Smith. We conclude, therefore, that Smith was not denied any constitutional right to present a meaningful voluntary intoxication defense based on the exclusion of this portion of Dr. Rubin's expert opinion testimony.

*By the Court.*—The judgments and orders of the circuit court are affirmed.